OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Thompson, Exr., Appellee, v. Wing et al., Appellants.

[Cite as Thompson v. Wing (1994), ___ Ohio St.3d ___.]

Judgments — Recovery in medical malpractice action by decedent during his lifetime does not bar subsequent wrongful death action on behalf of decedent's beneficiaries — Parties in wrongful death action brought pursuant to R.C. 2125.01 are barred by collateral estoppel from relitigating issues litigated and determined in decedent's prior action against the defendent.

1. A recovery in a medical malpractice action by a decedent during his or her lifetime does not bar a subsequent wrongful death action brought pursuant to R.C. 2125.01 on behalf of the decedent's beneficiaries.

2. The beneficiaries in a wrongful death action are in privity with the decedent. As a result, the parties in a wrongful death action brought pursuant to R.C. 2125.01 are barred by collateral estoppel from relitigating issues that were actually litigaged and determined in the decedent's prior action against the defendant.

(No. 93-620 — Submitted April 5, 1994 — Decided August 31,

1994.)

Appeal from the Court of Appeals for Summit County, No. 15764.

Susan W. Allen filed an action in 1987 for medical malpractice against several defendants, including appellants, N.D. Wing, M.D., and the Akron Clinic, Inc. Allen alleged in her complaint that she consulted Wing in November 1983 for medical care and that he provided such care from then until March 1986. In late February 1986 another doctor apparently diagnosed that Allen had cancer. Allen alleged that Wing was negligent and liable for malpractice with regard to her care, diagnosis, and treatment. She further alleged that his negligence and malpractice caused a substantial delay in the diagnosis of her cancer. Finally, she alleged that his negligence and malpractice caused her to lose earnings and earning capacity, and to suffer pain, anxiety, emotional distress and mental anguish, and a diminution of her life expectancy.

The jury returned a verdict against defendant Wing, finding him negligent for failing to act in accordance with acceptable

standards of care for an internist. The jury awarded Allen damages totalling fifty thousand dollars. Interrogatories were submitted to test the injury and damages proven by Allen. One interrogatory was directed at Allen's lost earnings, which the jury found to be ten thousand dollars. A second interrogatory was directed more generally at the injury and damages proven by Allen:

"[S]tate what injury and damage plaintiff has proven by a preponderance of the evidence that was directly and proximately caused by such negligence of Dr. N.D. Wing.

"ANSWER: Susan Allen's visits to the psychiatrist and the second evaluation were due to concerns that she had been victimized."

Wing and the Akron Clinic satisfied the judgment in Allen's medical malpractice action, and no appeal was filed.

Allen died in 1990 at the age of forty-nine from metastatic carcinoma of the breast. In 1991, appellee Elizabeth Thompson, the personal representative of Allen's estate, filed the present wrongful death action against Wing and the Akron Clinic. Thompson

alleged, as Allen had earlier, that Wing had provided medical care to Allen beginning in November 1983 and ending in March 1986. Thompson further alleged that Wing and the Akron Clinic were negligent and liable for malpractice for failing to diagnose Allen's breast cancer. Finally, Thompson alleged that Wing's negligence and malpractice proximately caused the delay in the diagnosis of Allen's cancer and ultimately her shortened life expectancy.

Defendants Wing and the Akron Clinic moved for summary judgment, which the trial court granted. The court held that Thompson could not bring a wrongful death action against defendants "based on the doctrine of collateral estoppel and a plain reading of the wrongful death statutes * * *."

The court of appeals reversed the decision of the trial court. The appellate court held that defendants were not entitled to judgment as a matter of law because "a personal injury action and a wrongful death action, arising out of the same wrongful act, are distinct, independent causes of action." The court did not address the collateral estoppel issue.

The cause is now before us pursuant to the allowance of a motion to certify the record.

Berkman, Gordon, Murray, Palda & DeVan, J. Michael Murray and Lorraine R. Baumgardner, for appellee.

Jacobson, Maynard, Tuschman & Kalur, Janis L. Small and David M. Best, for appellants.

Wright, J. The issue in this case is whether a judgment for medical malpractice entered in favor of a plaintiff during her lifetime bars a subsequent wrongful death action brought on behalf of her beneficiaries when both actions are based on the same tortious conduct. We hold that in such a situation a subsequent wrongful death action is not barred by the language of the wrongful death statute, R.C. Chapter 2125, but that collateral estoppel applies to the parties in the wrongful death action. In the present case, however, collateral estoppel does not bar appellee Thompson from bringing a wrongful death action against appellants Wing and the Akron Clinic. We therefore affirm the decision of the court of appeals.

Appellants present two arguments in support of their view

that a decedent's representative may not file a cause of action in wrongful death after the decedent has obtained a judgment in a medical malpractice action. The first argument is based on the wrongful death statute itself, R.C. Chapter 2125; the second concerns the application of collateral estoppel to the parties in the wrongful death action. We address these arguments below.

The Wrongful Death Statute

Appellants argue that R.C. Chapter 2125, which provides the sole basis for a cause of action in wrongful death, does not allow Thompson to bring her action. They claim that the ability to maintain a wrongful death action under R.C. 2125.01 is conditioned on the decedent's having a cause of action against the wrongdoer immediately before the decedent's death. Appellants assert (quite correctly) that Allen could not have maintained a cause of action against them immediately before her death because her claim for medical malpractice had been reduced to judgment and satisfied before her death. Appellants conclude that because the required condition has not been met, Thompson may not maintain the present wrongful death action. Appellants'

argument derives from the following language in R.C. 2125.01:

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured * * *." (Emphasis added.)

The meaning of the foregoing language has not been squarely addressed by this court in the context of a case like the one before us today. However, the meaning of this language has been addressed in similar cases in other jurisdictions with statutes similar to the Ohio statute. Courts began addressing this language in the mid-to-late 1800s, and despite the passage of time, a consensus does not exist even today.

At the outset, it should be noted that when a person is injured by the tortious conduct of another and the person later dies from the injury, two claims arise. The first is a claim for

malpractice or personal injury, enforced either by the injured person herself or by her representative in a survival action. The second is a wrongful death claim, enforced by the decedent's personal representative on behalf of the decedent's beneficiaries.

A difficult issue arises when an injured person brings an action during his or her lifetime, recovers a judgment against the defendant, and later dies — allegedly from the same conduct that gave rise to the initial claim for personal injury or malpractice (the situation in the present case). The issue concerns the effect the injured person's recovery has on his or her representative's ability to bring a subsequent wrongful death action. Two conflicting views have emerged on the issue, views explained and summarized in 2 Restatement of the Law 2d Judgments, (1982), Section 46, Comment, at 17-20.

According to the Restatement of Judgments 2d, a majority of jurisdictions hold that a recovery by the injured person in his or her own action extinguishes the subsequent wrongful death action. The rationale is that a wrongful death action is a

derivative action, one derived from the claim held by the decedent immediately before his or her death. Under the majority view, the decedent's representative may bring the action only if the decedent immediately before his or her death could have brought suit, a view based on the "if death had not ensued" phrase in the wrongful death statute. The phrase, according to a majority of jurisdictions, means that a recovery by the injured person during his or her lifetime defeats a wrongful death action because the person, if he or she were still living, could not have brought suit. Appellants ask us to adopt the majority view.

A minority of jurisdictions, on the other hand, hold that a recovery by the injured person does not extinguish a subsequent wrongful death action because the action is an independent cause of action. Accordingly, the decedent's prosecution or settlement of his or her own claim during his or her lifetime can have no effect on the separate wrongful death claim that arises upon the decedent's death. Instead, a wrongful death claim may be brought so long as the defendant's conduct was such that a cause of action could have been brought against him or her at one time,

not necessarily at the moment immediately before the decedent's death. Appellee argues for the minority position.

The split of authority on the issue in this case is by no means a recent development. The present-day majority view originated in an English case decided in 1868, twenty-two years after the passage of Lord Campbell's Act.1 The court in Read v. Great Eastern Ry. Co. (1868), L.R., 3 Q.B. 555, addressed the issue whether a widow could bring a wrongful death action under Lord Campbell's Act when her husband, who had been injured in a railway accident by the Great Eastern Railway Company, had settled his personal injury suit before his death.

The court held that the Act itself barred the widow from maintaining a wrongful death action against the Great Eastern Railway Company. Lord Campbell's Act allowed a wrongful death action to be brought only "in those cases where the person injured could maintain an action * * *," id. at 558, which referred to the person's ability to maintain an action immediately before his or her death.2 The injured husband in Read could not have maintained an action immediately before his

death "because he had already received satisfaction." Id. And because he could not have brought such an action, the widow was barred from bringing a wrongful death action.

The court in Read expressly rejected the notion that Lord Campbell's Act created a new cause of action. Referring to Section 2 of the Act, the provision on damages, Judge Blackburn stated: "This section may provide a new principle as to the assessment of damages, but it does not give any new right of action." Id. Judge Lush agreed: "It is true that s. 2 provides a different mode of assessing the damages, but that does not give a fresh cause of action." Id. The point was made clear fourteen years later in Griffiths v. The Earl of Dudley (1882), L.R., 9 Q.B. 357, 363, in which the court emphasized: "Read v. Great Eastern Ry. Co. (1) is a clear decision that Lord Cambpell's Act did not give any new cause of action, but only substituted the right of the representative to sue in the place of the right which the deceased himself would have had if he had survived."

Near the time Read v. Great Eastern Ry. Co. was decided, courts in this country began to address the issue whether a

wrongful death action could be maintained when the injured person had settled or recovered a judgment in an action before the person's death, reaching opposite conclusions on the issue. Some courts followed the conservative approach of the court in Read and refused to allow two suits on the same tortious conduct. Other courts were more expansive in their view, recognizing that the enactment of a wrongful death statute created a new cause of action, one that could not be foreclosed by the injured person during his or her lifetime.

Taking the conservative approach, for example, was the New York Court of Appeals in Littlewood v. New York (1882), 89 N.Y. 24, 42 Am.Rep. 271. The court held that a wrongful death action could not be maintained when the decedent had already recovered damages in an earlier personal injury action, citing the decision in Read. The court remarked that a wrongful death action was "singularly inappropriate to the case of one who has in his lifetime maintained the action and actually recovered his damages." Id. at 28, 42 Am.Rep. at 273.

The plaintiff in Littlewood had argued that New York's

wrongful death statute, enacted in 1847, created a new right of action. The court evaded this argument, asserting that "this is not the point on which the case turns." The question, the court said, was whether the legislature intended to add to the liability of a wrongdoer who had already paid damages. The court answered this question in the negative. The "plain language" of the statute, the court said, showed that the legislature did not intend such a result. Instead, the legislature intended only to deprive the wrongdoer of the immunity from liability afforded by the common-law rule that personal actions die with the person.

In contrast to the decisions in Read and Littlewood, we stated in an early decision under Ohio's wrongful death statute that the action created by the statute is an independent cause of action. In paragraph two of the syllabus in Mahoning Valley Ry. Co. v. Van Alstine (1908), 77 Ohio St. 395, 83 N.E. 601, we expressed our view that the statute "give[s] an independent right of action." We emphasized this view again in May Coal Co. v. Robinette (1929), 120 Ohio St. 110, 165 N.E. 576, paragraph two of the syllabus, in which we held: "The two actions, the survivor

action and the death action, although prosecuted by the same personal representative, are not in the same right * * *."3 Thus, our precedents hold that a wrongful death action is an independent cause of action. The doctrine of stare decisis requires us to apply this holding to the present case.

Because a wrongful death action is an independent cause of action, the right to bring the action cannot depend on the existence of a separate cause of action held by the injured person immediately before his or her death. To conclude otherwise would convert the wrongful death action from an independent cause of action to a derivative action, one dependent on a separate cause of action. Moreover, the wrongful death action does not even arise until the death of the injured person. It follows, therefore, that the injured person cannot defeat the beneficiaries' right to have a wrongful death action brought on their behalf because the action has not yet arisen during the injured person's lifetime. Injured persons may release their own claims; they cannot, however, release claims that are not yet in existence and that accrue in favor of persons other than

themselves.

For the foregoing reasons, we hold that a recovery in a medical malpractice action by a decedent during his or her lifetime does not bar a subsequent wrongful death action brought pursuant to R.C. 2125.01 on behalf of the decedent's beneficiaries. The statute requires the decedent to have at one time had a cause of action against the defendant. This condition was met in the present case, as is evident from the jury's finding that appellants were negligent in their care and treatment of Allen.

We recognize, however, that Allen's medical malpractice action and Thompson's wrongful death action are similar in that they each share the same set of underlying facts. As a result, many of the issues in the prior medical malpractice action will also be present in the subsequent wrongful death action. The second issue raised by appellants is whether the subsequent action is barred by the doctrine of collateral estoppel.

### Collateral Estoppel

Collateral estoppel (issue preclusion) prevents parties or

their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action. Whitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph two of the syllabus.

This case is unusual in that the parties who were found negligent in the prior medical malpractice action, Wing and the Akron Clinic, are the ones arguing for the application of collateral estoppel. They seek to assert collateral estoppel against Allen's beneficiaries (the real parties in interest in a wrongful death action). Because the beneficiaries were not a party to Allen's medical malpractice action, the initial question is whether they are in privity with Allen.

We have previously held that a person is in privity with another if he or she "succeeds to an estate or an interest

formerly held by another." Whitehead, supra, at 115, 49 O.O.2d at 439, 254 N.E.2d at 15. The beneficiaries assert their own independent right to have an action brought on their behalf under the wrongful death statute. They do not succeed to any estate or interest held by the decedent, and, as a result, they do not fit within the narrow definition of "privity" set forth above.

In certain situations, however, a broader definition of "privity" is warranted. As a general matter, privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Bruszewski v. United States (C.A.3, 1950), 181 F.2d 419, 423 (Goodrich, J., concurring). We believe the beneficiaries' relationship with the decedent is close enough to conclude that the beneficiaries are in privity with the decedent. The Restatement of Judgments 2d, supra, holds essentially the same view. Section 46(3) of the Restatement states:

"Issues determined by a judgment for or against a person in an action based on an act which later causes his death are

conclusive in a subsequent action for causing his death."

The Restatement recognizes that there is a close alignment of interests between the beneficiaries and the decedent. The decedent has every incentive to vigorously pursue a claim for personal injury or medical malpractice. Upon the decedent's death, the beneficiaries may reasonably expect to be bound by the determination of issues that were litigated in the earlier action, issues, concerning, for example, duty, breach of duty, and proximate cause. Moreover, allowing such issues to be relitigated in a wrongful death action could result in inconsistent decisions, with the defendant found liable in one action and not the other. Such a result would not further confidence in our judicial system. For these reasons, we hold that the beneficiaries in a wrongful death action are in privity with the decedent.

Because the beneficiaries are in privity with the decedent, they are collaterally estopped from relitigating issues that were decided in the decedent's own action. The central issue in a wrongful death action is whether a person's "wrongful act,

neglect, or default" caused the death of another.  See R.C. 2125.01.  To bring a wrongful death action upon a theory of negligence, the plaintiff must show (1) the existence of a duty owing to the plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of the duty and the death.  1 Speiser, Recovery for Wrongful Death (2 Ed. 1975) 64, Section 2:1.

Two of the three elements above were actually litigated and decided in Allen's medical malpractice case; the third was not. As a result, the present wrongful death action is not barred by collateral estoppel. The jury in Allen's medical malpractice action found that Wing and the Akron Clinic owed a duty to Allen and that they breached their duty. However, the issue concerning the proximate cause between the breach of their duty and Allen's death was not litigated in Allen's medical malpractice action for the very obvious reason that Allen was still living when her case was tried.

Appellants argue at length that their negligence did not cause Allen any physical harm. Instead, they argue, it caused

Allen only psychological harm. They draw this conclusion from the interrogatories in Allen's medical malpractice action which reveal that the jury apparently awarded Allen no damages for her shortened life expectancy. Instead, the jury awarded Allen ten thousand dollars for lost earnings and forty thousand dollars for her visits to a psychiatrist and for having obtained a second evaluation.

It makes little difference here (as far as the legal issue is concerned) whether appellants' negligence caused Allen physical harm. The primary issue in the present wrongful death action is whether appellants' neglect proximately caused Allen's death, and this issue has not yet been determined. It is not enough that a similar issue, one addressing physical injury instead of death, was litigated and decided in Allen's medical malpractice action. For collateral estoppel to bar the relitigation of an issue, precisely the same issue must have previously been litigated and decided.

In sum, we hold that the parties in a wrongful death action are barred by collateral estoppel from relitigating issues that

were actually litigated and determined in the decedent's prior action against the defendant. In the present case, therefore, Wing and the Akron Clinic should be bound by the determination that they owed Allen a duty and breached their duty. The proximate cause of Allen's death and the damages suffered by the beneficiaries were not litigated in Allen's medical malpractice action (nor could they have been). These issues remain to be litigated in the present wrongful death action.

For the foregoing reasons, the decision of the court of appeals is affirmed. The cause is remanded to the court of common pleas for proceedings consistent with this opinion.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, F.E. Sweeney and Pfeifer, JJ., concur.

Douglas, J., concurs in judgment.

Resnick, J., concurs in judgment only.

FOOTNOTES:

1. The English Parliament passed Lord Campbell's Act in 1846 to eliminate the harsh results inherent in the common-law rule

disallowing any recovery for the wrongful death of an individual, a rule attributed to the case of Baker v. Bolton (1808), 1 Campb. 493, 170 Eng. Rep. 1033. Lord Campbell's Act formed the basis for many wrongful death statutes in this country, including the wrongful death statute in Ohio, which was enacted in 1851. See 49 Ohio Laws 117.

As originally enacted, Lord Campbell's Act provided in relevant part:

"* * * That whensoever the Death of a Person shall be caused by wrongful Act, Neglect, or Default, and the Act, Neglect, or Default is such as would (if Death had not ensued) have entitled the Party injured to maintain an Action and recover Damages in respect thereof, then and in every such Case the Person who would have been liable if Death had not ensued shall be liable to an action for Damages, notwithstanding the Death of the Person injured ***." 9 & 10 Vict. Ch. 93, 86 Eng. Stat. at Large 531.

2. As explained by one English author, commenting on the decision in Read: "* * * if a person who ultimately dies of injuries caused by wrongful act or neglect has accepted

satisfaction for them in his lifetime, an action under Lord Campbell's Act is not afterwards maintainable. For the injury sued on must in the words of the Act be 'such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof'; and this must mean that he might immediately before his death have maintained an action, which, if he had already recovered or accepted compensation, he could not do." (Emphasis added.) Pollock, The Law of Torts: A Treatise on the Principles of Obligations arising from Civil Wrongs in the Common Law (12 Ed. 1923) 70.

3.    The facts in Van Alstine and Robinette are similar to the facts in the present case, but the cases are not directly on point because the decedents each held a claim immediately before their death. Nevertheless, the reasoning in Van Alstine and Robinette applies to the present case.

The decedent in Van Alstine had commenced an action before her death for injuries sustained in a railway accident. She died before the action could be resolved, and her administrator continued it under the survivor statute. The administrator later

recovered a judgment from the defendant, and the defendant, having satisfied the judgment, argued that the administrator was estopped from further prosecuting a pending wrongful death action. We disagreed, holding that the administrator may continue to prosecute the wrongful death action. We based our decision on the view that the action is independent from the decedent's personal injury action.

In Robinette, the administrator filed a survival action and, concurrently, a wrongful death action for the death of the decedent in an automobile accident. The survival action was heard first, and the jury returned a verdict in favor of the defendant. The defendant asserted this verdict as an additional defense in the wrongful death action. We held that the judgment in the survival action, even though adverse to the administrator, did not bar prosecution of the wrongful death action. We again reasoned that a wrongful death action is not the same as a personal injury action.

Douglas, J., concurring in judgment. Given the discussion by the majority concerning Lord Campbell's Act, the cases of

Baker v. Bolton (1808), 1 Campb. 493, 170 Eng.Rep. 1033, Griffiths v. The Earl of Dudley (1882), L.R., 9 Q.B. 357, and especially Read v. Great Eastern Ry. Co. (1868), L.R., 3 Q.B. 555, all found in "The Wrongful Death Statute" portion of the opinion and/or in fn. 1, I find it necessary to point out to any reader interested in wrongful death and the common law this court's split decision in Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 574 N.E.2d 457. In Shover, three members of this court, Justices A.W. Sweeney, Resnick and Douglas dissented. Our major concern, of course, was the sanctioning by the majority of the use of fraud to conceal the cause of a wrongful death so as to permit the limitations period in R.C. 2125.02(D) to expire before any suit was commenced. This concern remains today and is amplified by today's case wherein a slight change of facts would have, again, brought Shover into play. Shover should be overruled at our first opportunity to do so.

Our other concern was the incantation of the language "[a]t common law, there is no action for wrongful death." Id. at 215, 574 N.E. 2d at 459. See id. at 229, 574 N.E.2d at 468 (Douglas,

J., dissenting). Today's decision, written by a member of the majority in Shover, by its discussion and citations seems now to accept, at the very least by implication, that the Wrongful Death Statute (as a latter day descendent of Lord Campbell's Act) "* * * did not give any new cause of action, but only substituted the right of the representative to sue in the place of the right which the deceased himself would have had if he had survived." See majority's citation to Read, supra, and Griffiths, supra, and the discussion pertinent thereto.

Finally, I concur not just on the basis stated by the majority that "[t]he doctrine of stare decisis requires us to apply this holding to the present case," but also because the ultimate holding is just and correct.