This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, Donald R. Tabor, appeals the decision of the Summit County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellees, Todd and Kurt Schumacher ("the Schumachers"). We affirm in part, reverse in part, and remand.
In 1990, the Schumachers gave $82,000 to Mr. Tabor to invest in a business. In return, Mr. Tabor executed two promissory notes. Mr. Tabor signed these notes without specifically indicating that he was signing in his representative capacity for DBK Consultants, Inc.[1] In the first note, Mr. Tabor promised to pay Kurt Schumacher interest on his $50,000 investment at a rate of 12% per annum and to give him twenty-five shares of capital stock in 81 Northwest Building, Inc. Similarly, in the second note, Mr. Tabor agreed to pay Todd Schumacher interest on his $32,000 investment at a rate of 12% per annum and transfer to him sixteen shares of capital stock in 81 Northwest Building, Inc. The Schumachers never received any shares of stock.
On January 8, 1997, the Schumachers filed a complaint in the Summit County Court of Common Pleas against Mr. Tabor and numerous other defendants,[2] seeking to recover on the promissory notes.[3]
Shortly before trial, Mr. Tabor and his wife, also a defendant, filed a petition in the United States Bankruptcy Court, Northern District of Ohio, Eastern Division, for protection under Chapter 13 of the Bankruptcy Code. Accordingly, the proceedings in the Summit County Court of Common Pleas were stayed while the bankruptcy action was pending. After a hearing, the bankruptcy court found that Mr. Tabor was ineligible to be a Chapter 13 debtor because his noncontingent, liquidated, unsecured debt exceeded the maximum under Section 109(e), Title 11, U.S. Code[4] and dismissed his bankruptcy petition. Subsequently, the stay was lifted, and the Schumachers moved for summary judgment against Mr. Tabor, claiming that the bankruptcy court had determined that Mr. Tabor was personally liable on the notes and had determined that he was liable in the amount of $233,494.31 as of August 4, 1998;[5] therefore, they argue that the doctrine of res judicata applied, making summary judgment in their favor appropriate. On February 29, 2000, the trial court granted summary judgment in favor of the Schumachers and awarded them $264,128.75. The court also found that there was no just reason for delay. This appeal followed.
Mr. Tabor asserts a single assignment of error:
 The trial court did not afford DBK Consultants, Inc., Donald R. Tabor, or any of the other defendants to contest the issue of the material facts as to credits that were due against the amounts claimed by Plaintiffs.
Mr. Tabor avers that the trial court erred in granting summary judgment in favor of the Schumachers, based upon the doctrine of res judicata. Specifically, they contend that there is a genuine issue of material fact remaining as to whether Mr. Tabor was properly credited for payments already made to the Schumachers.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992),80 Ohio App.3d 487, 491.
The doctrine of res judicata involves both claim preclusion, historically known as estoppel by judgment in Ohio, and issue preclusion, known as collateral estoppel. Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, 381. Under claim preclusion, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Id. at syllabus. Res judicata
(claim preclusion) is an affirmative defense. Civ.R. 8(C); Jim's SteakHouse, Inc. v. Cleveland (1998), 81 Ohio St.3d 18, 21. On the other hand, collateral estoppel "precludes the relitigation of an issue that has been `actually and necessarily litigated and determined in a prior action.'" Krahn v. Kinney (1989), 43 Ohio St.3d 103, 107, quotingGoodson v. McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193, 195.
Although the trial court articulated its decision in terms of resjudicata (claim preclusion), we believe this case is more appropriately analyzed under the closely related, but analytically distinct, doctrine of collateral estoppel.
 Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.
Thompson v. Wing (1994), 70 Ohio St.3d 176, 183. "The burden is upon the party seeking to invoke collateral estoppel to prove that all the elements of the doctrine apply." Williams v. Chippewa Roofing, Inc. (Aug. 20, 1997), Wayne App. No. 96CA0089, unreported, at 5.
Here, the bankruptcy court was clearly a court of competent jurisdiction for determining whether Mr. Tabor was eligible to be a Chapter 13 debtor. See Jungkunz v. Fifth Third Bank (1994),99 Ohio App.3d 148, 152; 28 U.S.C. § 157(b)(1). Also, both Mr. Tabor and the Schumachers were represented in the bankruptcy proceedings. Further, after conducting an evidentiary hearing during which Mr. Tabor testified, the bankruptcy court determined that Mr. Tabor was personally liable on the notes because he did not specifically indicate that he was signing the notes in his representative capacity and because the maker of the notes is referred to by the personal pronoun "I." This determination was essential to the bankruptcy court's decision because if Mr. Tabor was not personally liable on the notes, he would then be eligible to be a Chapter 13 debtor, as his unsecured debts would not have exceeded the threshold limit. Accordingly, we conclude that the issue of Mr. Tabor's personal liability on the notes was actually and necessarily litigated and determined by the bankruptcy court, and therefore, Mr. Tabor is bound by the bankruptcy court's determination that he is personally liable on the notes.
Next, we turn to discuss the applicability of collateral estoppel to the issue of the amount of Mr. Tabor's liability on the notes. As previously mentioned, for collateral estoppel to apply, the specific issue must have been actually litigated and decided in the prior action.Thompson, 70 Ohio St.3d at 183. In the case at bar, the bankruptcy court used the Schumachers' proof of claim as prima facie evidence of the validity and amount of their claim because it found that Mr. Tabor's estimation of the Schumacher claim was made in bad faith and because Mr. Tabor failed to object to the amount in the proof of claim. See Fed.R.Bankr.P. 3001(f). The Schumachers argue that, by utilizing the amount in their proof of claim to determine Mr. Tabor's eligibility to be a Chapter 13 debtor, the bankruptcy court resolved the issue of the amount Mr. Tabor owed on the notes, thereby making the application of the doctrine of collateral estoppel appropriate. However, the bankruptcy court was concerned with determining whether Mr. Tabor's unsecured debts, including the amount of the Schumachers' claim as well as other creditors' claims, exceeded the threshold to be a Chapter 13 debtor, and did not focus on the precise amount owed on the notes.[6] Furthermore, we note that Mr. Tabor may not have objected to the amount in the Schumachers' proof of claim because he exceeded the limit to be a Chapter 13 debtor by approximately $57,000; therefore, there was no impetus to object and litigate the issue of the specific amount owed on the notes because unless the payments to the Schumachers exceeded $57,000, they would not affect the bankruptcy court's determination as to Mr. Tabor's eligibility to be a Chapter 13 debtor. Hence, we conclude that the issue of the amount owed to the Schumachers on the notes was not specifically litigated and determined by the bankruptcy court, and that therefore, the doctrine of collateral estoppel does not apply to bar relitigation of this specific issue.
Accordingly, Mr. Tabor's assignment of error is overruled as to the determination of personal liability and sustained as to the amount of the liability on the notes owed to the Schumachers. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
 FOR THE COURT
SLABY, J., QUILLIN, J., CONCUR.
[1] "DBK CONSULTANTS, INC." was typewritten above Mr. Tabor's signature.
[2] The other defendants are not parties to the present appeal.
[3] The Schumachers also asserted claims of unjust enrichment, fraudulent misrepresentation, and an action to pierce the corporate veil.
[4] Pursuant to Section 109(e), Title 11, U.S. Code, "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $269,250 * * * may be a debtor under chapter 13 of this title."
[5] The bankruptcy court used the Schumachers' proof of claim ($233,494.31) in determining whether Mr. Tabor was eligible to be a Chapter 13 debtor because the court found that Mr. Tabor's estimation of $78,000 of liability on the notes was made in bad faith and because the Tabors had not objected to the Schumachers' proof of claim. See Fed.R.Bankr.P. 3001(f) (the proof of claim is prima facie evidence of the validity and amount of the claim if the debtor does not object).
[6] The bankruptcy court found that the Schumachers' claim, combined with the claims of Mr. Tabor's other creditors, exceeded $269,250 of noncontingent, liquidated, unsecured debt.