DAVIS, Appellant and Cross–Appellee,

v.

**DEMBEK; Metropolitan Property & Casualty Insurance Company et al., Appellees and Cross–Appellants.**

[Cite as *Davis v. Dembek,* 150 Ohio App.3d 423, 2002-Ohio-6443.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1450.

Decided Nov. 26, 2002.

Clark, Perdue, Roberts & Scott and Paul O. Scott, for appellant.

Tsitouris & Gerrity and Chris C. Tsitouris, for appellee Metropolitan Property & Casualty Insurance Company.

Keener, Doucher, Curley & Patterson and Thomas J. Keener, for appellee Transcontinental Insurance Company and Continental Casualty Company.

DESHLER, Judge.

{¶ 1} Plaintiff-appellant, Nancy Lynn Davis, in her capacity as the personal representative of decedent, John Daryl Davis, appeals from a judgment of the Franklin County Court of Common Pleas, partially granting the summary judgment motions of defendants-appellees, Metropolitan Property & Casualty Insurance Company ("Metropolitan"), Transcontinental Insurance Company ("Transcontinental"), and Continental Casualty Company ("Continental"). Metropolitan, individually, and Transcontinental and Continental, jointly, cross-appeal from the judgment of the trial court.

{¶ 2} On August 16, 1996, John Daryl Davis ("decedent") was involved in an automobile accident caused by the negligence of Michelle Dembek ("Dembek"). Decedent suffered severe injuries in the accident, including brain trauma that left him in a comatose or semi-comatose state.

{¶ 3} As a result of decedent's injuries, a guardianship was established with decedent's wife, Nancy Davis ("plaintiff" herein), and Patrick Daulton serving as

co-guardians. Subsequently, a lawsuit was filed against Dembek and Dembek's automobile insurer, Metropolitan, on behalf of decedent, Nancy Davis, the couple's minor children, Adam, Luke, and Micah Davis, and the couple's adult daughter, Katie Davis. On June 9, 1998, the parties to the lawsuit entered into a "Settlement Agreement and Release" ("settlement agreement") by which plaintiffs agreed to settle their claims against Dembek and Metropolitan for $100,000, the per-person limit of the liability coverage under the Metropolitan policy. The release was signed by Daulton in his capacity as decedent's co-guardian; Nancy Davis in her individual capacity, her capacity as Davis's co-guardian, and her capacity as mother and next friend of the couple's minor children; and by Katie Davis, in her individual capacity.

{¶ 4} On April 12, 1999, decedent died, allegedly as the result of the injuries he suffered in the automobile accident. Decedent was survived by his wife, Nancy Davis; his minor children, Adam, Luke, and Micah Davis; his adult daughter, Katie Davis; his parents Katherine and Farris Davis; and three siblings, Wayne Davis, Gary Davis, and Barbara Reisbick. On August 24, 1999, plaintiff, in her capacity as decedent's personal representative, filed a complaint for declaratory judgment and wrongful death naming Dembek,[1] Metropolitan, and Transcontinental, with whom decedent's employer, Highlights for Children, had a business automobile policy that provided $1,000,000 of uninsured/underinsured motorist coverage, as defendants. The complaint sought a declaration that an additional $100,000 of coverage was available under the liability provisions of the Metropolitan policy to satisfy the wrongful death claims of decedent's wife, children, parents, and siblings (collectively "next of kin"), a declaration that $1,000,000 of coverage was available under the underinsured motorist provisions of the Transcontinental policy[2] to satisfy the wrongful death claims of decedent's next of kin, and damages in excess of $25,000 for decedent's wrongful death from Metropolitan and Transcontinental.

{¶ 5} On July 3, 2000, Metropolitan filed a third-party claim asserting that, if any of decedent's next of kin were to recover on their wrongful death claims, it would be entitled to indemnification from plaintiff, Katie Davis, and Patrick Daulton[3] pursuant to the terms of the settlement agreement.

---

1. Dembek was eventually dismissed from the action with prejudice by agreement of the parties.

2. Plaintiff's claim against the Transcontinental policy is brought pursuant to the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116.

3. On April 19, 2001, the parties entered into a stipulation that Daulton had signed the settlement agreement only in his capacity as decedent's co-guardian and consequently was not liable on Metropolitan's indemnification claim.

{¶ 6} All of the parties moved for summary judgment on the various claims. On October 27, 2000, the trial court issued a decision in which it (1) declared that the Metropolitan policy provides an additional $100,000 of liability coverage for wrongful death claims; (2) declared that the Transcontinental policy provides $1,000,000 of underinsured motorist coverage for wrongful death claims; (3) declared that plaintiff, individually, but not in her capacity as decedent's personal representative, and Katie Davis are barred by the settlement agreement from recovering against the Metropolitan policy on their wrongful death claims, because both signed the settlement agreement in their individual capacities; (4) declared that plaintiff, individually, not in her capacity as decedent's personal representative, and Katie Davis are barred from recovering against the Transcontinental policy on their wrongful death claims, because they failed to preserve Transcontinental's subrogation rights when they signed the settlement agreement without providing Transcontinental with prior notice; (5) declared that decedent's mother, father, and siblings are not barred by the settlement agreement from recovering against the Metropolitan policy on their wrongful death claims, because none of the signatories to the settlement agreement had the legal authority to release the wrongful death claims of these individuals; (6) declared that decedent's mother, father, and siblings are not barred from recovering against the Transcontinental policy, because Transcontinental's subrogation rights with respect to the claims of these individuals remain intact; (7) deferred its determination of whether decedent's minor children are barred from recovering against the Metropolitan and Transcontinental policies on their wrongful death claims due to the fact that plaintiff signed the settlement agreement in her capacity as the children's mother and next friend; (8) declared that plaintiff and Katie Davis are obligated under the terms of the settlement agreement to indemnify Metropolitan for any amounts Metropolitan pays as the result of the wrongful death claims of plaintiff, Katie Davis, or decedent's minor children; and (9) deferred its determination of whether plaintiff and Katie Davis are obligated under the terms of the settlement agreement to indemnify Metropolitan for any amounts Metropolitan pays as the result of the wrongful death claims of decedent's parents or siblings.

{¶ 7} Following the trial court's initial decision, Metropolitan and Transcontinental filed supplemental motions for summary judgment addressing the matters on which the trial court had deferred determination. In addition, on April 11, 2001, the parties filed a stipulation acknowledging that decedent's employer had an additional $1,000,000 of excess uninsured/underinsured motorist coverage under a policy issued by Continental, which coverage would be available in the event that the entire $1,000,000 of uninsured/underinsured motorist coverage available under the Transcontinental policy is consumed by the wrongful death claims of decedent's next of kin, deeming plaintiff's complaint to be

amended to add Continental as a defendant, and deeming Transcontinental's answer to be Continental's answer as well.

{¶ 8} On August 20, 2001, the trial court issued a second decision in which it declared that plaintiff and Katie Davis are obligated under the terms of the settlement agreement to indemnify Metropolitan for any amounts Metropolitan pays as the result of the wrongful death claims of decedent's parents or siblings and that decedent's minor children are barred from recovering against the Metropolitan and Transcontinental policies for decedent's wrongful death because plaintiff, acting in her capacity as the children's mother and next friend, had the authority to settle the children's future claims when she entered into the settlement agreement.

{¶ 9} On November 26, 2001, the trial court filed a judgment entry in which it summarized its two earlier decisions, stayed all proceedings on the wrongful death claim pending appeal of its determinations with respect to plaintiff's claims for declaratory judgment, and indicated that there was no just reason for delay pursuant to Civ.R. 54(B). Plaintiff appeals therefrom assigning the following three errors:

{¶ 10} "First Assignment of Error

{¶ 11} "The trial court erred by finding that wrongful death claims of the surviving spouse and children of decedent John Daryl Davis under the Metropolitan Property & Casualty Company liability insurance policy are barred.

{¶ 12} "Second Assignment of Error

{¶ 13} "The trial court erred by finding that Nancy Davis and Katie Davis are obligated to indemnify Metropolitan Property & Casualty Company for all wrongful death claims arising from the death of John Daryl Davis.

{¶ 14} "Third Assignment of Error

{¶ 15} "The trial court erred by finding that the surviving spouse and children of decedent John Daryl Davis are not entitled to underinsurance under the Transcontinental (Continental) Policy."

{¶ 16} Metropolitan cross-appeals assigning the following three errors:

{¶ 17} "CROSS–APPELLANT METROPOLITAN * * * FIRST ASSIGNMENT OF ERROR

{¶ 18} "The trial court erred in ruling that the claimants Katherine Davis (the decedent's mother), Ferris [sic] Davis, Wayne Davis, Gary Davis and Barbara Reisbick were not bound by the settlement agreement and release entered into with Michelle R. Dembek and her liability insurer[.]

{¶ 19} "CROSS–APPELLANT METROPOLITAN * * * SECOND AS-SIGNMENT OF ERROR

{¶ 20} "The trial court erred in ruling that Katherine Davis (the decedent's mother), Ferris [sic] Davis, Wayne Davis, Gary Davis and Barbara Reisbick are entitled to liability claims against Metropolitan Property and Casualty Insurance Company[.]

{¶ 21} "CROSS–APPELLANT METROPOLITAN * * * THIRD ASSIGN-MENT OF ERROR

{¶ 22} "The trial court erred in ruling that the policy of insurance issued by Metropolitan Property and Casualty Insurance Company provides $100,000.00 additional coverage for the remaining viable wrongful death claims of Katherine Davis (the decedent's mother), Ferris [sic] Davis, Wayne Davis, Gary Davis and Barbara Reisbick[.]"

{¶ 23} And Transcontinental and Continental jointly cross-appeal assigning the following two errors:

{¶ 24} "FIRST ASSIGNMENT OF ERROR:

{¶ 25} "The Trial Court erred in ruling that the claimants Katherine Davis (the decedent's mother) Farris Davis, Wayne Davis, Gary Davis and Barbara Reisbick were not bound by the Settlement Agreement and Release entered into with Michelle R. Dembek and her liability insurer, Metropolitan Property and Casualty Insurance Company, and that therefore they still have viable claims for wrongful death arising from the motor vehicle accident in question.

{¶ 26} "SECOND ASSIGNMENT OF ERROR:

{¶ 27} "The Trial Court erred in ruling that Katherine Davis, Farris Davis, Wayne Davis, Gary Davis and Barbara Reisbick are entitled to present uninsured or underinsured motorist coverage claims against Transcontinental and Continental Casualty as a result of the accident in question."

{¶ 28} Preliminarily, as this matter arises in the context of the trial court's rulings on the parties' various motions for summary judgment brought pursuant to Civ.R. 56, we review the trial court's determination independently and without deference. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. In conducting our review, we apply the same standard as does the trial court. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765.

{¶ 29} In accordance with Civ.R. 56, summary judgment may be granted only if, viewing the evidence most strongly in favor of the nonmoving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion that is adverse to the

nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 30}  Plaintiff's first assignment of error asserts that the trial court erred in concluding that plaintiff, in her individual capacity, Katie Davis, and decedent's minor children are barred by the settlement agreement from recovering against the Metropolitan policy for decedent's wrongful death.  With respect to the release of claims, the settlement agreement provides:

{¶ 31}  "A. Releasors do hereby release and forever discharge Releasees and their heirs, personal representatives and assigns of and from any and all claims, demands, rights, actions and causes of action of whatsoever kind or nature, past, present or future, whether at law or in equity, which the Releasors have, had or claimed to have, or which the Releasor might hereafter have or claim to have against Releasees arising out of the aforesaid accident, including but not limited to any future claim, whether known to them or not, against Releasees.

{¶ 32}  "In particular, but without in any respect limiting the generality of the foregoing, and for said consideration, the Releasors do hereby release and forever discharge Releasees and their heirs, personal representatives, subsidiaries, affiliates, employees and assigns from any and all claims, demands, rights, actions, and causes of action of whatsoever kind or nature arising out of, or caused in any way, in connection with the accident referred to hereinabove, including any and all claims, demands, rights, actions and causes of action, including but not limited to, claims for personal injury, pain and suffering, permanent disability, loss of services, loss of parental and filial consortium, medical expenses, property damage, or any medical, hospital, nursing or other expenses resulting or arising from the accident or as a result of said accident.

{¶ 33}  "B. The Releasors hereby acknowledge and agree that the Release set forth herein is a general release and they further expressly waive and assume the risk of any and all claims for damages which exist as of this date but of which they do not know or suspect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Release.  Releasors further agree that they have accepted payment of the sum specified herein as a complete compromise of matters involving disputed issues of law and fact and they assume the risk that the facts or law may be otherwise than they believe."

{¶ 34}  The above language unambiguously releases all claims, whether known or unknown, discovered or undiscovered, or existent or not yet existent, arising out of the automobile accident in which decedent was injured.  Consequently, there is no need for this court to construe the language as plaintiff contends. *Knox v. Metro. Life Ins. Co.* (1967), 12 Ohio App.2d 5, 8, 41 O.O.2d 6, 230 N.E.2d

352. Plaintiff also argues, however, that because decedent remained alive when the settlement agreement was executed, the wrongful death claims of decedent's next of kin had not yet accrued and that under the Ohio Supreme Court's decision in *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 637 N.E.2d 917, wrongful death claims cannot be released until they have accrued.

{¶ 35}   In *Thompson,* the decedent recovered on a medical malpractice claim against her treating physician and hospital during her lifetime. Following the decedent's death from the same cause that led to her malpractice action, her personal representative filed a wrongful death action against the parties who had been the defendants in the decedent's prior personal injury action. The defendants moved for summary judgment arguing that the wrongful death claim was barred by the doctrine of collateral estoppel. In rejecting defendants' argument, the Supreme Court stated:

{¶ 36}   "Because a wrongful death action is an independent cause of action, the right to bring the action cannot depend on the existence of a separate cause of action held by the injured person immediately before his or her death.  * * * It follows, therefore, that the injured person cannot defeat the beneficiaries' right to have a wrongful death action brought on their behalf because the action has not yet arisen during the injured person's lifetime. Injured persons may release their own claims; they cannot, however, release claims that are not yet in existence and that accrue in favor of persons other than themselves." Id. at 183, 637 N.E.2d 917.

{¶ 37}   Plaintiff asserts that this statement stands for the broad proposition that wrongful death claims that have not accrued may not be released by any party, even the party in whose favor the future claim would accrue.

{¶ 38}   We recently rejected plaintiff's broad reading of *Thompson* in *Kissinger v. Pavlus,* Franklin App. No. 01AP–1203, 2002-Ohio-3083, 2002 WL 1013085. In *Kissinger,* the decedent was seriously injured in an automobile accident. Prior to the decedent's death, the decedent and her husband settled the decedent's personal injury claims against the tortfeasor and his insurance company in exchange for releases of liability for all claims arising out of the automobile accident. Subsequently, the decedent died and a wrongful death action was brought against the tortfeasor and his insurance company on behalf of the decedent's next of kin. Relying on *Thompson,* the defendants argued that the release executed prior to the decedent's death served to bar the wrongful death claims of all of the decedent's next of kin. We disagreed, holding that while neither the decedent nor her husband had the authority to release the wrongful death claims of next of kin who were not parties to the release, the decedent's husband, as a party to the release, could release his own future wrongful death claim. Id. at ¶ 15, 16.

{¶ 39} Applying our holding in *Kissinger* to the present case, we conclude that the trial court correctly held that plaintiff's and Katie Davis's individual wrongful death claims are barred by the settlement agreement. See, also, *Lambert v. W. Res. Care Sys.* (Feb. 24, 2000), Mahoning App. No. 97 C.A. 238, 2000 WL 246494.

{¶ 40} We now turn to the question of whether plaintiff's execution of the settlement agreement as the mother and next friend of decedent's minor children bars the children from recovering their wrongful death claims. The issue of whether a parent has the authority to release the future wrongful death claim of a child is a question of first impression in Ohio. Nonetheless, it is well established that parents do not ordinarily possess the authority to settle the existing claims of their minor children. *Hewitt v. Smith* (Dec. 16, 1998), Lorain App. No. 97CA006987, 1998 WL 887165; *Weiand v. Akron* (1968), 13 Ohio App.2d 73, 75, 42 O.O.2d 178, 233 N.E.2d 880. The fear that parents will be influenced by emotional and financial pressure where their children are concerned, as well as the potential for fraud, appear to be the primary motives behind this rule. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 373, 696 N.E.2d 201. The Ohio General Assembly has created an exception to the general rule that permits a parent to settle the claims of a minor child with the authorization of the probate court when the settlement amount is $10,000 or less. R.C. 2111.18. However, where the settlement amount is more than $10,000, only a guardian appointed by the probate court may settle the claims of a minor with the "advice, approval, and consent of the probate court." R.C. 2111.18.

{¶ 41} It is true that the Ohio Supreme Court decision in *Zivich* holds that a parent has the authority to execute a binding release of a minor child's future personal injury claims sounding in negligence against volunteers and sponsors of nonprofit recreational activities. Id. at 374, 696 N.E.2d 201. However, this decision rests on the court's conclusion that the reasons behind the general rule against allowing parents to release the claims of their minor children are not present where the consideration for the release consists entirely of the child's participation in a recreational activity. Id. at 373–374, 696 N.E.2d 201. In contrast, where a parent's release of a minor child's possible future wrongful death claim is at issue, concern that the parent might be influenced by emotional or financial pressures to release the child's claim is every bit as justified as where the release is of a child's present personal injury claim.

{¶ 42} In the present case, plaintiff attempted to settle her minor children's wrongful death claims for considerably more than $10,000. We are unable to find any reason why a parent who lacks the legal authority to release the existing claims of her minor children should possess the legal authority to release the children's future claims. Accordingly, we conclude that plaintiff lacked the

authority to settle the claims of her minor children. As a result, the settlement agreement does not bar the wrongful death claims of decedent's minor children.

{¶ 43} Plaintiff's first assignment of error is overruled in part and sustained in part.

{¶ 44} In her second assignment of error, plaintiff challenges the trial court's declaration that the settlement agreement obligates plaintiff and Katie Davis to indemnify Metropolitan for any amounts it pays on account of decedent's wrongful death. The indemnification provision of the settlement agreement provides as follows:

{¶ 45} "E. Releasors expressly and specifically stipulate and agree that they will protect, indemnify and forever hold harmless Releasees and their heirs, personal representatives and assigns from and against any and all claims, demands, actions or lawsuits of any kind which may be asserted against Releasees on account of or because of injuries or damages allegedly sustained or which may be sustained by John D. Davis or Releasors as a result of the aforesaid accident, including but not limited to, any and all medical liens or subrogation claims arising from, based on, or connected to payments made to or on behalf of John D. Davis or Releasors for medical care, examination, treatment, therapy, evaluation, testing, consultation or other services provided to John D. Davis or Releasors because of or arising out of the personal injuries sustained by John D. Davis in the aforesaid accident, or any subrogation claims based on disability payments made to or on behalf of John D. Davis or Releasors.

{¶ 46} "It is specifically understood and agreed that Releasors shall indemnify and hold harmless Releasees from any and all claims, cost, loss or expense resulting from any subrogation claim, now possessed or which may hereafter be acquired by Highlights for Children, Ohio Department of Human Services, Healthcare Recoveries, Inc., Prudential Plus of Central Ohio, State Farm Fire & Casualty Insurance Company, State Farm Mutual Automobile Insurance Company and Medicaid and/or Medicare."

{¶ 47} Plaintiff raises two objections to the trial court's reading of the indemnification provision in the settlement agreement. First, plaintiff contends that the indemnification provision does not apply to the wrongful death claims of decedent's next of kin, as the clause contains no reference to such claims. Although the indemnification provision does not expressly refer to wrongful death claims, we do not find this fact sufficient to eliminate the provision's application to such claims. The language employed in the indemnification provision to describe the covered claims states, "any and all claims, demands, actions or lawsuits of any kind which may be asserted against Releasees on account of or because of injuries or damages allegedly sustained or which may be sustained by John D.

Davis or Releasors as a result of the aforesaid accident," is very broad and cannot reasonably be read to exclude wrongful death claims that arise out of decedent's death from the injuries he sustained in the accident.

{¶ 48} Plaintiff also asserts that the indemnification provision is addressed primarily to subrogation claims and that under the rule of ejusdem generis, the claims language therein should be narrowly construed to include only subrogation claims. While it is true that the third paragraph of the indemnification provision is addressed solely to subrogation claims, the balance of the provision is addressed to all claims arising out of the automobile accident generally and refers to subrogation claims only as one example of the type of claims for which indemnification will be required.

{¶ 49} Plaintiff's second assignment of error is overruled.

{¶ 50} Plaintiff's third assignment of error challenges the trial court's conclusion that plaintiff and decedent's children are barred from recovering on their claims for decedent's wrongful death against the underinsured motorist coverage provided by the Transcontinental policy, and therefore from the excess underinsured motorist coverage provided by the Continental policy, due to their failure to provide Transcontinental with an opportunity to protect its subrogation rights prior to entering into the settlement agreement.

{¶ 51} The Transcontinental insurance policy contains the following subrogation clause: "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after 'accident' or 'loss' to impair them." It is well established that a subrogation clause of this type in an uninsured/underinsured motorist policy is a valid and enforceable precondition to the duty to provide underinsured motorist coverage. *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus, overruled in part on other grounds by *Fulmer v. Insura Prop. & Cas. Co.* (2002), 94 Ohio St.3d 85, 760 N.E.2d 392, paragraph one of the syllabus. It is also well established that a subrogation clause requires one making a claim for uninsured/underinsured motorist coverage to provide the uninsured/underinsured carrier with reasonable notice of any proposed settlement with the tortfeasor prior to entering into such a settlement and that failure to provide such notice is a material breach of the insurance contract that relieves the uninsured/underinsured carrier of its obligation to provide coverage under the insurance contract. *Bogan* at 31, 521 N.E.2d 447, as modified by *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456, paragraph two of the syllabus, and *Fulmer* at 93, 760 N.E.2d 392.

{¶ 52}   In challenging the trial court's ruling with respect to the subrogation clause, plaintiff does not challenge the validity or applicability of the subrogation clause, nor does she contend that Transcontinental was provided with notice of the settlement agreement prior to its execution.   Rather, plaintiff points to a handwritten addendum to the settlement agreement that plaintiff's counsel inserted just prior to the agreement's execution, which provides:

{¶ 53}   "Notwithstanding anything in this release to the contrary, the settlement agreement [and] release shall have no effect on the claims of Releasors against any underinsured motorist carrier including State Farm Fire & Casualty Co. [and] State Farm Mutual Automobile Ins. Co."

{¶ 54}   While it is clear that the above addendum was intended to prevent plaintiff and decedent's children from losing any claims they might have against any uninsured/underinsured motorist carrier as a consequence of their failure to provide such carrier with prior notice of the settlement agreement, the addendum is legally incapable of accomplishing its intended goal.   Together, the subrogation clause and the applicable case law require that Transcontinental be given reasonable notice of a proposed settlement agreement prior to its execution.   The addendum cannot alter the terms of the Transcontinental insurance contract, the relevant law, or the fact that Transcontinental was not provided with the required notice.

{¶ 55}   Because the addendum was ineffective to accomplish its purpose, plaintiff and Katie Davis are barred from recovering against the Transcontinental and Continental policies as a result of their failure to protect Transcontinental's subrogation rights.   However, given our earlier conclusion that the settlement agreement was not effective to release the wrongful death claims of decedent's minor children, the minor children did not fail to protect Transcontinental's subrogation rights.   Therefore, the minor children may pursue their underinsured motorist claims for wrongful death proceeds against both Transcontinental and Continental.

{¶ 56}   Plaintiff's third assignment of error is overruled in part and sustained in part.

{¶ 57}   We now turn our attention to Metropolitan's and Transcontinental's cross-appeals.   We will address Metropolitan's three assignments of error and Trans-continental's two assignments of error together, as all allege that the trial court erred in holding that the wrongful death claims of decedent's parents and siblings are not barred by the settlement agreement.   Initially, both Metropolitan and Transcontinental contend that decedent's parents and siblings are bound by the settlement agreement because plaintiff effectively executed the agreement as decedent's personal representative.

{¶ 58} Under Ohio law, a wrongful death action may be brought only by the personal representative of the decedent's estate, for the "exclusive benefit of the surviving spouse, the children, * * * the parents * * *, and * * * the other next of kin of the decedent." R.C. 2125.02(A)(1). Further, Ohio law has long held that when a decedent's personal representative executes a general release in a wrongful death action, such a release is effective as to the wrongful death claims of all of decedent's next of kin. *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 111, 255 N.E.2d 628. Based on these principles, Metropolitan and Transcontinental contend that when plaintiff executed the settlement as decedent's guardian, she was effectively acting as decedent's personal representative, and thus her execution of the agreement should be construed to have released the wrongful death claims of all of decedent's next of kin.

{¶ 59} The settlement agreement at issue in the present case was executed prior to decedent's death. Although plaintiff was acting as her husband's court-appointed guardian when she executed the settlement agreement, because decedent had not yet passed away, she was not acting as his personal representative for purposes of the wrongful death statute. Consequently, plaintiff had no authority to act for any of decedent's next of kin when she executed the settlement agreement, and the wrongful death claims of decedent's next of kin who were not parties to the settlement agreement were not released thereby.

{¶ 60} Transcontinental also contends that the wrongful death claims of decedent's parents and siblings are barred by the settlement agreement, because the release of all of decedent's claims in the settlement agreement served to release the wrongful death claims of all of decedent's next of kin. Relying on the Ohio Supreme Court's decision in *Thompson*, we rejected this argument in *Kissinger*. Specifically, we concluded that because a wrongful death action is an independent cause of action that accrues in favor of a decedent's next of kin, the release of all of a decedent's claims prior to his death does not serve to release the wrongful death claims of next of kin who were not parties to the antemortem release. *Kissinger* at ¶ 15.

{¶ 61} As a final matter, we note that because decedent's next of kin who were not parties to the antemortem release did not release their claims against the tortfeasor, they also did not breach the subrogation clause in the Transcontinental policy by impairing Transcontinental's subrogation rights. Thus, Transcontinental retains its right of subrogation.

{¶ 62} Metropolitan's three assignments of error and Transcontinental's two assignments of error are overruled.

{¶ 63} Plaintiff's second assignment of error, Metropolitan's three assignments of error, and Transcontinental's two assignments of error having been

overruled, but plaintiff's first and third assignments of error having been overruled in part and sustained in part, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded. On remand, an additional $100,000 of additional liability coverage exists under Metropolitan's policy, and $1,000,000 of underinsured motorist coverage exists under both the Transcontinental and Continental policies to satisfy the wrongful death claims of decedent's minor children, parents, and siblings. However, plaintiff and Katie Davis are obligated to indemnify Metropolitan for any amounts that Metropolitan pays on account of any of these wrongful death claims.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

KLATT, J., concurs.

BROWN, J., concurs in part and dissents in part.

BROWN, Judge, concurring in part and dissenting in part.

{¶ 64} I dissent from the majority decision only in that the majority affirms the trial court's ruling that plaintiff and Katie Davis must indemnify Metropolitan for any amounts it pays in the wrongful death action.

{¶ 65} The amount of $100,000 was available from Metropolitan for the survivorship claim, and this amount has been paid to plaintiff and Katie Davis. It appears that there is an additional $100,000 available from Metropolitan for wrongful death claims. The wording of the settlement agreement under section E, which contains the indemnification language, would indicate that it was intended to target subrogation claims on the survivorship claims as well as on any wrongful death claims of the releasors. The indemnification language in this agreement, however, does not cover wrongful death claims of next of kin who did not sign the release.

{¶ 66} It cannot be disputed that the settlement agreement refers to indemnification. It is stated in section E that releasors will indemnify releasees on any claims asserted due to injuries sustained by John D. Davis or releasors as a result of the accident. The balance of section E then discusses medical liens and subrogation claims.

{¶ 67} While the word "indemnify" appears in section E, nothing in the agreement suggests that plaintiff and Katie Davis would be forced to indemnify for wrongful death claims for which they made no collection. They are barred from maintaining their own wrongful death claims due to the broad language of

the settlement agreement. The language in the agreement simply does not indicate that the parties intended that these two plaintiffs return their $100,000 in the event of John Davis's death to cover any wrongful death claims of other family members where it appears that the policy provides $100,000 for the personal injury claim and $100,000 for the wrongful death claims. Metropolitan would be placed in a better position than that for which it had bargained.

{¶ 68} In section E it is stated:

{¶ 69} "Releasors expressly and specifically stipulate and agree that they will protect, indemnify and forever hold harmless Releasees and their heirs, personal representatives and assigns from and against any and all claims, demands, actions or lawsuits of any kind which may be asserted against Releasees on account of or because of injuries or damages allegedly sustained or which may be sustained by John D. Davis or Releasors as a result of the aforesaid accident * * *."

{¶ 70} The first $100,000 was paid for the injuries sustained by John Davis. The releasors, Nancy Davis and Katie Davis, are barred from asserting a wrongful death claim for their own injuries. The indemnification language requires releasors to indemnify only for all claims asserted against releasees due to injuries to John Davis, Nancy Davis or Katie Davis. This would include wrongful death claims asserted by plaintiff or Katie Davis. Under a strict reading of the indemnification language, releasors are not required to indemnify as a result of wrongful death claims brought by other family members for their own injuries under the wrongful death statute.