OPINION
Plaintiffs-appellants, Joseph Benton Kissinger, individually and as administrator of the estate of Bonnie Kissinger, Denise Kissinger, Carol Grimm, and Joseph Bert Kissinger (collectively "plaintiffs"), appeal from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 12(B)(6) motion of defendant-appellee, Jeffrey M. Pavlus. Plaintiffs timely appeal, and assign a single error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DISMISSING PLAINTIFFS' ACTION FOR WRONGFUL DEATH BASED UPON THE EXECUTION OF A RELEASE BEFORE THE DECEDENT'S DEATH.
Because the trial court erred in finding all plaintiffs' claims were barred by the executed releases, we affirm in part and reverse in part.
According to plaintiffs' complaint, in November 1991, Bonnie Kissinger was a passenger in an automobile operated by her husband, Joseph Kissinger, and was seriously injured when the vehicle was involved in an accident with a vehicle operated by Pavlus. In September 1993, in consideration of $12,500 paid by Pavlus' insurance company, Bonnie and Joseph Kissinger executed a release in which they discharged Pavlus from liability. In December 1997, Bonnie and Joseph Kissinger fully settled under Bonnie Kissinger's policy with Motorists Mutual Insurance Company for the sum of $100,000, paid pursuant to underinsurance coverage. In June 1999, Bonnie Kissinger died.
On June 8, 2001, plaintiffs filed a wrongful death action, attaching copies of the settlement agreements with Pavlus and Motorists Mutual Insurance Company. The complaint named as defendants Pavlus, Motorist Mutual Insurance Company, Travelers Insurance Company, and John Doe Insurance Carriers, and alleged Bonnie Kissinger's death was the proximate result of Pavlus' wrongful conduct. Plaintiffs sought damages, litigation costs, and a declaratory judgment concerning underinsured motorist coverage through the insurance carriers. On July 18, 2001, Pavlus filed a motion to dismiss pursuant to Civ.R. 12(B)(6). The trial court filed a journal entry granting Pavlus' motion to dismiss and expressly finding no just reason for delay pursuant to Civ.R. 54(B).
Plaintiffs' single assignment of error asserts the trial court erred in granting Pavlus' motion to dismiss. More particularly, relying on Thompson v. Wing (1994), 70 Ohio St.3d 176, plaintiffs contend the trial court erred when it determined that a 1993 settlement agreement, involving decedent, her husband, and Pavlus, precluded plaintiffs' claims of wrongful death.
"When reviewing a judgment granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim, an appellate court must independently review the complaint to determine if dismissal is appropriate. * * * The appellate court need not defer to the trial court's decision in Civ.R. 12(B)(6) cases. * * * Dismissal of a claim for failure to state a claim upon which relief may be granted is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. * * * In construing a complaint on a motion to dismiss pursuant to Civ.R. 12(B)(6), a court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party." Gleason v. Ohio Army Natl. Guard (2001),142 Ohio App.3d 697, 700.
In Thompson, the Ohio Supreme Court considered "whether a judgment for medical malpractice entered in favor of a plaintiff during her lifetime bars a subsequent wrongful death action brought on behalf of her beneficiaries when both actions are based on the same tortious conduct." Id. at 178. The Supreme Court held that a decedent's recovery in a medical malpractice action during the decedent's lifetime did not bar a subsequent wrongful death action brought pursuant to R.C. 2125.01 on behalf of decedent's beneficiaries. Id. In reaching that conclusion, Thompson noted a wrongful death action is an independent action, not a derivative action that is "derived from the claim held by the decedent immediately before his or her death." Id. at 180. See, generally, Thompson at 179-184. Thompson, however, also held beneficiaries in a wrongful death suit are in privity with a decedent and, therefore, "the parties in a wrongful death action are barred by collateral estoppel from relitigating issues that were actually litigated and determined in the decedent's prior action against the defendant." Id. at 185.
In this case, the trial court correctly determined that plaintiffs have an independent cause of action under a wrongful death action and plaintiffs, as beneficiaries, are in privity with the decedent. The trial court, however, erred in determining that plaintiffs' wrongful death action was barred by the doctrine of collateral estoppel based on decedent's settlement agreement with Pavlus. Thompson explained:
 Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action. Id. at 183.
Collateral estoppel does not apply to plaintiffs' claims because the decedent did not actually and directly litigate the prior action with Pavlus. Unlike Thompson, decedent and Pavlus resolved the matter of Pavlus' alleged wrongful conduct through settlement, not litigation. Consequently, the trial court erred by barring plaintiffs' recovery based on the doctrine of collateral estoppel. See, e.g., Teagle v. Lint (1998), Summit App. No. 18425 ("The information contained in the pleadings and the facts in this case do not support any of the necessary elements of collateral estoppel. First, the issue was not actually and directly litigated in the prior action because the litigation was terminated by settlement. Therefore, there was no decision or final judgment by a court of competent jurisdiction"). (Emphasis sic.)
Moreover, even though provisions in the settlement agreement signed by decedent, her husband, and Pavlus, purport to bar plaintiffs Denise Kissinger, Carol Grimm and Joseph Bert Kissinger from bringing wrongful death claims, those provisions are unenforceable under the Ohio Supreme Court's reasoning in Thompson:
 Because a wrongful death action is an independent cause of action, the right to bring the action cannot depend on the existence of a separate cause of action held by the injured person immediately before his or her death. To conclude otherwise would convert the wrongful death action from an independent cause of action to a derivative action, one dependent on a separate cause of action. Moreover, the wrongful death action does not even arise until the death of the injured person. It follows, therefore, that the injured person cannot defeat the beneficiaries' right to have a wrongful death action brought on their behalf because the action has not yet arisen during the injured person's lifetime. Injured persons may release their own claims; they cannot, however, release claims that are not yet in existence and that accrue in favor of persons other than themselves. Id. at 183.
Accordingly, notwithstanding language in the settlement agreement, neither decedent nor her husband could defeat the right of the other plaintiffs to have a wrongful death action brought on his or her behalf: the wrongful death claims had not yet arisen and did not accrue in favor of decedent or her husband. See, also, Phillips v. Community Traction Co. (1933), 46 Ohio App. 483 (concluding separate settlement agreements by decedent and her husband did not preclude beneficiaries' wrongful death action).
Because decedent and her husband could not properly release Denise Kissinger's, Carol Grimm's, and Joseph Bert Kissinger's wrongful death claims, the issue resolves to whether Joseph Kissinger, in his individual capacity, could properly release his own wrongful death claim when he and Bonnie Kissinger executed the release in which they discharged Pavlus from liability. See, e.g., Thompson at 183 ("Injured persons may release their own claims"); see, also, Clark v. Scarpelli (2001),91 Ohio St.3d 271, 281, reconsideration denied, 91 Ohio St.3d 1530
("Pursuant to R.C. 2125.01 and 2125.02[A][1], in an action for wrongful death, the surviving statutory beneficiaries have the right to recover damages suffered by reason of the wrongful death of the decedent. * * * Further, each statutory wrongful death beneficiary's claim is considered separate and distinct from the claim of the estate, and from each other, pursuant to R.C. 2125.02[A][1]").
Through the express terms of the settlement agreement, decedent and her husband agreed that the payment and settlement "terminate[d] further controversy respecting all claims for damages that we have heretofore asserted or that we * * * might hereafter assert because of said accident." Because the wrongful death claim is alleged to be a proximate result of the accident with Pavlus and arose after the settlement agreement, the wrongful death claim of Joseph Kissinger in his individual capacity is barred by the express terms of the settlement agreement to which he was a party. Accordingly, based on the express terms of the settlement agreement, the trial court properly dismissed the wrongful death claim of Joseph Kissinger in his individual capacity pursuant to Civ.R. 12(B)(6).
However, in his capacity as the administrator of decedent's estate, Joseph Kissinger is a proper party to this lawsuit. Former R.C.2125.02(A)(1) provided that "[e]xcept as provided in this division, an action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent." As noted in Buchert v. Newman (1993), 90 Ohio App.3d 382,384, dismissed, jurisdictional motion overruled (1994), 68 Ohio St.3d 1449
"[a] wrongful-death cause of action was not recognized at common law. It is strictly a creation of statute, subject to the rights and limitations imposed therein." Therefore, pursuant to former R.C. 2125.01(A)(1), the decedent's children, the other plaintiffs in this lawsuit, were required to bring this lawsuit in the name of Joseph Kissinger in his capacity as administrator of the decedent's estate. See, also, Gibson v. Solomon (1939), 136 Ohio St. 101, paragraph one of the syllabus ("In an action for wrongful death, properly brought in a court of competent jurisdiction by the personal representative of the decedent * * * such personal representative is but a nominal party and the designated beneficiaries for whose exclusive benefit the action is maintainable are the real parties in interest").
In support of his contention that the trial court's order should be affirmed, Pavlus argues that the contract clauses of both the federal and state constitutions bar a court from judicially altering the settlement agreement. See Section 10, Article I, United States Constitution ("No State shall * * * pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts"); see, also, Section 28, ArticleII, Ohio Constitution.
With respect to his contentions under the federal constitution, Pavlus cites Ehrhardt v. Baltimore Ohio RR. Co. (1985), 24 Ohio App.3d 83, as support for his contention that "[t]he obligations of the parties to the release are set out in writing and may not be impaired by a judicial decision that changes the construction of the agreement." (Emphasis sic.) (Defendant's brief, 7.) In Ehrhardt, the First District Court of Appeals stated that "[w]hile the general rule is that state court decisions are not `laws' within the federal prohibition against the impairment of the obligation of contracts, Barrows v. Jackson (1953), 346 U.S. 249, 260
[73 S.Ct. 1031], judicial decisions which change the construction and interpretation of a statute may violate the Contract Clause. See Thomas v. State ex rel. Gilbert (1907), 76 Ohio St. 341." Id. at 87. Here, in its decision, the trial court did not interpret any statutory provision; rather, the trial court interpreted Thompson, and applied it to the pleadings and exhibits before it. Therefore, Pavlus' reliance on Ehrhardt is misplaced.
Moreover, subsequently in King v. Safeco Ins. Co. (1990),66 Ohio App.3d 157, 163, the First District Court of Appeals declined to follow its decision in Ehrhardt, noting:
 In light of the decision of the United States Supreme Court in Fleming [v. Fleming (1924), 264 U.S. 29, 44 S.Ct. 246] * * * we find that our reliance in Ehrhardt * * * was misplaced. Therefore, we decline to follow the rule of law set forth in Ehrhardt which states that the retrospective application of judicial decisions that alter the construction or interpretation of a statute may violate the federal Contract Clause. We adopt here, instead, the rule set forth in Fleming, supra, that judicial decisions, even if they alter the construction or interpretation of a statute, do not constitute "law[s]" for the purposes of the federal prohibition against the impairment of the obligation of contracts.
See, also, Barrows v. Jackson (1953), 346 U.S. 249, 260, 73 S.Ct. 1031, quoting Tidal Oil Co. v. Flanagan (1924), 263 U.S. 444, 451, 44 S.Ct. 197
(stating "[i]t has been settled by a long line of decisions, that the provision of section 10, article 1, of the federal Constitution, protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgments of courts"). Accordingly, Pavlus' contention that the trial court's decision must be upheld because, to do otherwise, would violate the contract clause of the United States Constitution is not well-taken.
As to Pavlus' contentions under the Ohio Constitution, the express language of Section 28, Article II provides that "[t]he general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts." See, also, Bielat v. Bielat (2000),87 Ohio St.3d 350, 352-353 ("Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. * * * The retroactivity clause nullifies those new laws that `reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]'"). The express restriction of Section 28, Article II, Ohio Constitution, is on the General Assembly, not the judiciary or its decisions.
Moreover, to the extent that Pavlus relies on Thomas v. State ex rel. Gilbert (1907), 76 Ohio St. 341 and its interpretation of federal constitutional provisions as a limit on judicial decisions under the state constitution, the First District Court of Appeals in King questioned the continuing validity of Thomas, as Thomas relied on United States Supreme Court precedent that since has been rejected as reflected in Fleming and Barrows. Accordingly, Pavlus' arguments based on Section28, Article II, Ohio Constitution are unpersuasive.
Pavlus also contends the trial court correctly granted his motion because a judicial decision may not impair the construction of a settlement agreement when contractual rights have vested. In Peerless Elec. Co. v. Bowers (1955), 164 Ohio St. 209, 210, appeal dismissed (1956), Van Huffel Tube Corp. v. Bowers, 352 U.S. 804, 77 S.Ct. 30, the Ohio Supreme Court noted that "[t]he general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." See, also, Wendell v. Ameritrust Co., N.A. (1994), 69 Ohio St.3d 74, 77; see, generally, Restatement of the Law 2d, Contracts (1981), 463, Variation of a Duty to a Beneficiary, Section 311.
Here, Pavlus contends plaintiffs' contractual rights vested at the time decedent and Joseph Kissinger received payment of the policy limits, dismissed the case against Pavlus, and executed the settlement agreement with Pavlus. Pavlus further contends that, in 1993, nothing prevented the decedent from releasing all claims, thereby preventing a challenge by beneficiaries in exchange for the settlement sum.
Pavlus correctly asserts that the contractual rights of decedent, Joseph Kissinger, in his individual capacity, and Pavlus, the parties to the settlement agreement, vested at the time the contractual obligations of their settlement agreement were fulfilled. The contractual rights of plaintiffs Denise Kissinger, Carol Grimm, and Joseph Bert Kissinger, however, did not vest when the contractual obligations of the settlement agreement were fulfilled. As the Ohio Supreme Court noted in Thompson at 183 "[T]he wrongful death action does not even arise until the death of the injured person. It follows, therefore, that the injured person cannot defeat the beneficiaries' right to have a wrongful death action brought on their behalf because the action has not yet arisen during the injured person's lifetime. Injured persons may release their own claims; they cannot, however, release claims that are not yet in existence and that accrue in favor of persons other than themselves." Therefore, because Denise Kissinger's, Carol Grimm's, and Joseph Bert Kissinger's claims had not yet arisen and were not in existence at the time of the settlement with Pavlus, their claims could not have vested when decedent and Joseph Kissinger settled with Pavlus. Moreover, because their rights had not vested, the holding of Thompson may properly be retroactively applied. See Peerless at 210.
The trial court thus correctly dismissed the wrongful death claim of Joseph Kissinger, in his individual capacity, pursuant to Civ.R. 12(B)(6). However, the trial court erred in dismissing the other wrongful death claims. Accordingly, we affirm that portion of the trial court's judgment that dismissed the wrongful death claim of Joseph Kissinger in his individual capacity, but regarding the remaining plaintiffs' wrongful death claims, we reverse the trial court's judgment and remand this matter to the trial court for proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part; case remanded.
DESHLER and KLATT, JJ., concur.