**In re Thomas J. MULLINS, Sr.,**
**Wilma I. Mullins, Debtors.**

No. 10–52641.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

March 8, 2011.

300

Stephen A. Santangelo, Columbus, OH, for Key Bank.

Bryan B. Johnson, Columbus, OH, for TPI Asset Management, LLC.

### MEMORANDUM OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF TPI ASSET MANAGEMENT, LLC

C. KATHRYN PRESTON, Bankruptcy Judge.

## I. Introduction

This matter is before the Court upon the Second Amended Objection to Confirmation of Debtors' Chapter 13 Plan ("Second Amended Objection") (Doc. # 24) filed by TPI Asset Management, LLC (hereinafter "TAM") on July 9, 2010, TAM's Memorandum in Support of Its Second Amended Objection (Doc. # 25) filed on July 22, 2009, the Stipulation entered into between TAM and Debtors (Doc. # 26) filed on July 22, 2010, Debtors' Brief in Response to TAM's Second Amended Objection (Doc. # 27) filed on July 23, 2010, and the Memorandum in Opposition to TAM's Second Amended Objection (Doc. # 29) filed on July 23, 2010, by Key Bank. The issue for the Court to determine is the priority of TAM's interest in Debtors' real estate.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

The contested provision in Debtors' Plan concerns the treatment of TAM's claim. TAM asserts that it has a lien on Debtors' real estate located at 2600 Plainview Avenue, Columbus, Ohio 43223 (the "Real Estate"). According to the Real Estate Appraisals (Doc. # 13) filed by Debtors on March 24, 2010, the value of the Real Estate is between $31,000 and $72,000. Debtors' Plan proposes to pay TAM's claim as unsecured and further indicates that Debtors will file an action to avoid TAM's lien upon the Real Estate. TAM objects to the confirmation of Debtors' Plan on numerous grounds. First, TAM asserts that pursuant to a state court certificate of judgment and a decree of foreclosure, TAM should be treated as a secured creditor. Second, TAM asserts that the Plan fails to cure the default of TAM's claim within a reasonable time and fails to provide for payments on its claim while the

case is pending. Third, the plan fails to provide for the payment of all or part of TAM's lien from property of the estate of debtors. Fourth, the Plan fails to provide for payment of TAM's secured claim within the applicable commitment period. Fifth, the Plan fails to provide for payment or protection of TAM's lien rights against the Real Estate. Sixth, TAM does not accept the Plan. Seventh, the Plan undervalues the Real Estate.[1]

Debtors do not oppose TAM's objection. Debtors request that the Court allow them to amend their Plan after a ruling upon TAM's objection.[2]

Key Bank asserts an interest in this matter as the successor by merger to Society National Bank.[3] Key Bank argues that TAM's state court judgment does not have the effect of extinguishing Key Bank's secured lien upon the Real Estate and that Key Bank holds the first mortgage upon the Real Estate. Key Bank relies upon the fact that TAM has not successfully proceeded to sheriff's sale of the Real Estate nor confirmation of the sale of the Real Estate. Furthermore, Key Bank asserts that TAM had no right to assert an interest against Debtor Thomas J. Mullins, Sr. as TAM's lien was only against Debtor Wilma Mullins.

For the reasons stated below, the Court concludes that Debtors' Plan as written improperly fails to provide for treatment of TAM's secured claim. The Court, therefore, sustains the Objection.

1. TAM further asserts that Debtors improperly claimed the Real Estate as exempt. This assertion is in actuality an objection to Debtors' claim of exemption. Therefore, by separate notice, the Court will set a hearing on TAM's objection to Debtors' claim of exemption in the Real Estate.

2. Debtors further request that in the event TAM is determined to be a secured creditor against the Real Estate, that any payments made to Key Bank, who is the first mortgage

## II. Background

### A. TAM's Secured Claim

On February 26, 1996, Debtors granted Society National Bank a first mortgage on their Real Estate. The first mortgage was duly recorded with the Franklin County Recorder's Office on March 4, 1996. On September 25, 2000, TAM obtained a judgment against Debtor Wilma Mullins, and placed a lien upon her interest in the Real Estate by filing a certificate of judgment in the Franklin County Court of Common Pleas on March 24, 2009. On May 20, 2009, TAM filed a lawsuit to foreclose its judgment lien in the Franklin County Court of Common Pleas, Ohio (the "State Court"), in the case of *TPI Asset Management, LLC. V. Wilma I. Mullins, et al.*, case # 09CVE–05–7604. TAM listed several defendants in the case including entities holding liens upon the Real Estate. On July 22, 2009, TAM obtained a default judgment with respect to Society National Bank, Ebbets Partners, Ltd., and Surgery & Gynecology, Inc. On October 16, 2009, TAM obtained a default judgment as to both Debtors. On December 28, 2009, TAM obtained a default judgment against the last remaining lien holder, Platinum Financial Services, Inc. (Society National Bank, Ebbets Partners, Ltd., Surgery & Gynecology, Inc., and Platinum Financial Services, Inc. are hereinafter collectively referred to as "Defendant Lien Holders").

holder upon the Real Estate, outside the plan post-petition be recovered. The Court notes that such relief must be requested by separate motion, or if necessary, an adversary proceeding.

3. Key Bank asserts that it is the successor in interest to Society National Bank and thus, holder of the first mortgage upon the Real Estate. However, Key Bank has failed to offer any evidence to support its assertion.

In the default judgments against the Defendant Lien Holders, the State Court made specific findings of fact and ordered that the Defendant Lien Holders were forever barred from asserting their liens, interests, or claims against the Real Estate and that their liens, interests or other claims against the Real Estate were discharged. The State Court ordered that the Real Estate may be sold free and clear of the Defendant Lien Holders' liens, interests or claims. The judgment also specifically set forth the priority of liens upon the Real Estate, noting that TAM was second in priority behind the Treasurer of Franklin County for taxes and assessments. On December 22, 2009, an Order of Sale was issued and a sheriff's sale was set for March 12, 2010. On March 11, 2010, Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. TAM timely filed a proof of claim in the amount of $17,029.70.

## B. The Plan

Debtors filed their proposed Chapter 13 Plan on March 11, 2010 (Doc. # 6). Pursuant to the Plan, Debtors propose to pay to the Trustee for disbursement to their creditors the sum of $154 per month. The Plan provides for payment of Key Bank's mortgage loan outside the Plan. This is permissible because Debtors are apparently not in payment default of their mortgage loan.[4] The Plan further provides that the claim of TAM, among others, shall be paid as an unsecured claim and that a motion or adversary proceeding shall be filed pursuant to 11 U.S.C. § 506 (or other relevant provision of the Bankruptcy Code) to avoid liens and/or mortgages subordinate to Key Bank's mortgage.

---

4. While Debtors may be current on their payments upon Key Bank's mortgage loan, Debt-

## III. Discussion

### A. Collateral Estoppel Applies to Determine the Relationship of the Parties

TAM asserts that its claim is secured by a lien upon Debtors' Real Estate and that the Plan fails to properly treat its secured claim under § 1325(a)(5). TAM argues that the State Court default judgments and decree of foreclosure ("Judgment") resulted in TAM's lien having priority over all of the Defendant Lien Holders' liens and that such liens were extinguished. TAM further argues that collateral estoppel prevents this Court from re-litigating the issues resolved by the Judgment.

It is without dispute that a federal court must give a prior state court judgment the same preclusive effect as would be given that same judgment under the law of the state in which it was rendered. *Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir.1995). Under Ohio law, the doctrine of collateral estoppel prevents a party from re-litigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (Ohio 1994). The doctrine of collateral estoppel applies in Ohio when a fact or issue (1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom collateral estoppel is asserted was a party to the prior action. *In re Monas*, 309 B.R. 302, 306 (Bankr.N.D.Ohio 2004). The party asserting estoppel carries the burden of proving its elements by a preponderance of the evidence. *Monas*, at 306.

The court in *Monas* faced a similar issue as the issue before this Court. In that

ors may be in default of other provisions of the mortgage loan.

case, the debtor objected to the secured claim of a mortgage creditor on the grounds that an Ohio state court foreclosure judgment had rendered the claim unsecured. The mortgage creditor responded to the objection and asserted that no foreclosure sale had taken place, that only an order of sale was entered, and that the bankruptcy petition enjoined further state court action. The mortgage creditor also asserted that its mortgage could only be extinguished by a foreclosure sale of the underlying real property. The court in *Monas* found that the state court foreclosure judgment met all of the requirements of collateral estoppel. *Id.* at 306. The *Monas* court found that the state court decree was a final judgment despite the fact that it was a default judgment because there was an express adjudication of the issues. *Id.* at 306–307. The *Monas* court further found that the issue of the validity and extent of the mortgage creditor's lien had been tried and decided when the state court cancelled the creditor's mortgage and that such a finding was necessary to make a final determination in the foreclosure action. *Id.* at 307. Finally, the *Monas* court found that the state court was the appropriate court to determine the priority, validity and extent of the parties' liens because property interests are determined by state law. *Id.* at 307. Thus, the *Monas* court found that by virtue of the state court judgment, the mortgage creditor had lost its lien on the debtors' property.

█ This Court must now determine whether TAM has established by a preponderance of the evidence that collateral estoppel applies in this case. The first element is clearly established by the Judgment. As stated in *Monas,* under Ohio law, a state court decree in foreclosure is a final judgment even if no foreclosure sale occurred due to the filing of a debtor's bankruptcy case. *Id.* at 306. On December 18, 2009, TAM was granted a default judgment and decree of foreclosure as to all the Defendant Lien Holders and Debtors. The default judgment and decree of foreclosure contain findings of fact and conclusions of law. The Judgment carefully addresses each of the parties' interests, including the priority and validity of all liens, and made findings accordingly.

The second element required to satisfy the application of collateral estoppel is that the issue must have been actually tried and decided and must have been necessary for the final decision. The dispositive issue in this matter is the priority and validity of TAM's claim. In the state court action, the validity and priority of TAM's claim was determined. Furthermore, the Judgment extinguished the secured claims of the Defendant Lien Holders. In a state court foreclosure action, it is necessary for the court to determine each lien holder's interest in order to issue a final judgment. Therefore, the second element of collateral estoppel has been satisfied.

The next element required to satisfy the application of collateral estoppel is that the previous action was heard by a court of competent jurisdiction. Because property interests are to be determined by state law, the determination of the priority and validity of the parties' liens and interests was properly before the State Court. Therefore, the third element of collateral estoppel has been satisfied.

Finally, TAM, Debtors, and Defendant Lien Holders were all parties to the previous action in the state court. For this reason, and the reasons stated above, the default judgment and decree of foreclosure can be given collateral estoppel effect. Consequently, this Court must honor the terms of the State Court Judgment. The Judgment recognized that TAM is a secured creditor by virtue of its judgment

lien upon Debtors' Real Estate, the other liens are discharged, and TAM's lien has priority over all the Defendant Lien Holders' liens.

### B. Key Bank's Arguments are Barred by the Application of Collateral Estoppel

█ Key Bank argues that TAM's Judgment does not extinguish Key Bank's security interest. First, Key Bank argues that its lien remains intact until confirmation of a foreclosure sale of the Real Estate. Key Bank asserts that a request to marshall liens in a foreclosure action does not in itself create a priority but maintains the status quo of the liens during the pendency of the action. Key Bank analogizes this to the doctrine of *lis pendens*.[5] Key cites no other authority in support of its position. Key Bank secondly argues that TAM only has a fractional interest in the Real Estate as TAM's money judgment is against Debtor Wilma Mullins only.

TAM did not request marshalling of liens in its foreclosure complaint, but even if it had, Key Bank fails to illustrate how the concept supports its theory. Conversely, as previously discussed herein, this Court must honor the rulings made by the State Court in its Judgment. Key Bank asserts that it is the successor by merger to Society National Bank. On July 22, 2009, TAM obtained a default judgment against Society National Bank. As the successor by merger to Society National Bank, Key Bank is bound by the terms of the State Court Judgment. Key Bank is collaterally estopped from raising any arguments or defenses that should

have been raised in the state court action. All of the arguments raised by Key Bank relate to the issues resolved in the state court action. The State Court made an express finding that Key Bank's interest in the Real Estate was barred and discharged and that the Real Estate may be sold free and clear of Key Bank's claims. Therefore, Key Bank's arguments are of no avail.

### C. Debtors' Plan Fails to Comply with 11 U.S.C. § 1325

█ The Plan may be confirmed only if it meets certain specified requirements, including compliance with the provisions of Chapter 13 and with the other applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1325(a)(1) (a court may confirm a Chapter 13 plan only if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title"). TAM's secured claim has priority over the Defendant Lien Holders' claims. Therefore, Debtors' Plan must provide for payment of TAM's secured claim to the extent of its interest in Debtors' Real Estate,[6] unless TAM's lien is void or voidable pursuant to provisions of the Bankruptcy Code. TAM points out that the distribution to TAM under the Plan on account of TAM's claim is less than the amount of TAM's claim, in violation of 11 U.S.C. § 1325(a)(5).

Section 1325(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if ...

(5) with respect to each allowed secured claim provided for by the plan

(A) the holder of such claim has accepted the plan;

---

**5.** The doctrine of *lis pendens* in Ohio is codified in Ohio Revised Code § 2703.26 which states "[W]hen a complaint is filed, the action is pending so as to charge a third person with notice of its pendency. While pending, no interest can be acquired by third persons in

the subject of the action, as against the plaintiff's title."

**6.** See 11 U.S.C. § 506; but see 11 U.S.C. § 1322(c).

(B)(i) the plan provides that

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed, or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan . . .

11 U.S.C. § 1325(a)(5).

As previously discussed, the Judgment results in TAM's lien becoming the first and best lien upon the Real Estate, aside from the County Treasurer's lien. Because TAM has a lien superior to the interest of the Defendant Lien Holders, and **IF** the Plan does not seek to cure defaults and reinstate Key Bank's Mortgage, the Plan must treat TAM's claim as secured and provide for payment of TAM's claim pursuant to § 1325(a)(5).

■ The Plan as filed fails to recognize TAM's position as a secured creditor. However, the court would be remiss if it did not recognize the potential effect of 11 U.S.C. § 1322. Pursuant to that section of the Bankruptcy Code, Debtors have a right to cure a default under their home mortgage loan. Debtors' right to cure is limited in the following respects:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) *until such residence is sold* at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law . . .

11 U.S.C. § 1322 (emphasis added). Section 1322 provides Debtors with an opportunity to cure any default with respect to their mortgage loan to Key Bank prior to the sale of their Real Estate at foreclosure. Section 1322 seems to clash with the Court's opinion herein; however, that is because Debtors have failed to provide any cure to the Key Bank mortgage loan through their Plan. If Debtors were to provide for the cure of any defaults under their mortgage loan to Key Bank, this Court's analysis and conclusion may be different.

Because of the Court's reasoning above, TAM's other arguments do not need to be addressed at this time.

## IV. Conclusion

In light of the foregoing, it is **OR-DERED** that:

1) The Second Amended Objection to Confirmation of Debtors' Chapter 13 Plan (Doc. # 24) is hereby sustained and confirmation of the Plan is denied.

2) Within fourteen (14) days of the date of entry of this Order, Debtors shall file an amended Chapter 13 plan.

3) If Debtors fail to timely file an amended plan, then the Trustee shall file a notice of same and contemporaneously submit an order of dismissal, whereupon, this case shall be dismissed.

**IT IS SO ORDERED.**