[Cite as *Winland v. Christman*, 2019-Ohio-2408.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

TIMOTHY L. WINLAND,

Plaintiff-Appellee,

v.

JOHN L. CHRISTMAN ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MO 0005**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2016-080

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Timothy Pettorini, Atty. J. Fraifogl, Atty. J. McNab*, Roetzel & Andress, LPA, 222 South Main Street, Suite 400, Akron, Ohio 44308, for Plaintiff-Appellee, and

*Atty. Charles Bean*, Thornburg & Bean, 113 West Main Street, P.O. Box 96, St. Clairsville, Ohio 43950, for Appellants-Defendants.

Dated:
June 14, 2019

**Donofrio, J.**

{¶1} Defendants-appellants, John Christman, Katherine Haselberger, and Charlotte McCoy, appeal from a Monroe County Common Pleas Court judgment granting summary judgment in favor of plaintiff-appellee, Timothy Winland, on his claim to quiet title to certain oil and gas rights.

{¶2} In 1994, appellee purchased 39.542 acres of land in Monroe County (the Property). In 2000, an oil and gas developer approached appellee about developing the oil and gas underlying the Property. The developer informed appellee that the oil and gas rights underlying the Property had previously been reserved by three individuals through three deeds: Edith Scarborough (by deed executed November 4, 1911); Bentley Scarborough (by deed dated April 15, 1916); and Watson Scarborough (by deed dated April 15, 1916).

{¶3} Consequently, appellee retained an attorney to conduct a title examination. He then filed a quiet title action (ODMA lawsuit) against the three Scarboroughs seeking a declaration that their interests were either abandoned pursuant to Ohio's Dormant Mineral Act in effect at the time (the 1989 ODMA)[1] or had been extinguished pursuant to the Marketable Title Act. Because appellee was unable to locate any of the three Scarboroughs or their heirs or assigns, he served them by publication in the local newspaper.

{¶4} No one responded to the publication. Hence, on February 22, 2001, the trial court issued a judgment declaring that the three named Scarboroughs' previously-reserved interests were abandoned and had vested in appellee, or in the alternative were extinguished (the 2001 Judgment). The court quieted title to the oil and gas (including royalties) underlying the Property against any claims by the three named Scarboroughs, their heirs, or assigns.

{¶5} In 2012, the developer informed appellee that the Property might be subject to another reservation of a two-fifths interest in the oil and gas underlying the

---

1 Appellee filed his lawsuit during the time the 1989 ODMA was in effect (March 22, 1989 to June 30, 2006). Thus, the 2006 ODMA had no effect on his claim.

Property in favor of Harlan Scarborough and Maggie Fogle. Thus, appellee filed another action to quiet title. He served Harlan and Maggie and their heirs and successors by publication.

{¶6} Appellants then came forward as the successors in interest, but not as successors of Harlan and Maggie. Instead, appellants claimed to be the successors in interest to Watson and Bentley. They claimed a royalty interest in the production of oil and gas from the Property.

{¶7} Appellants traced their alleged interest back to 1884, when the Property, along with other adjoining property (collectively known as the Scarborough Tract), was conveyed to William Scarborough. When William died in 1899, his interest in the Scarborough Tract passed to five heirs in equal parts. Those heirs were Maggie Fogle, Harlan Scarborough, Edith Scarborough, Watson Scarborough, and Bentley Scarborough.

{¶8} The Scarborough Tract was subsequently subject to several mineral reservations.

{¶9} On October 17, 1908, Harlan and Maggie conveyed their two-fifths interest in the Scarborough Tract to John Umpleby as the guardian of Watson and Bentley Scarborough. But Harlan and Maggie reserved their right to the oil and gas underlying the Scarborough Tract.

{¶10} On November 4, 1911, Edith conveyed her one-fifth interest in the Scarborough Tract to Umpleby as the guardian of Watson and Bentley. Edith reserved her one-fifth share of all royalties resulting from oil and gas production.

{¶11} On February 28, 1916, Watson sued Bentley and his guardian, seeking a sale of Bentley's interest in the Scarborough Tract with the exception of the oil and gas rights. At that time, Watson and Bentley each owned one-half of the surface and a one-fifth interest in the oil and gas. Maggie, Harlan, and Edith were not parties to the lawsuit even though Maggie and Harlan still owned a one-fifth interest in the oil and gas and Edith still owned a one-fifth royalty interest in the oil and gas underlying the Scarborough Tract.

{¶12} On April 15, 1916, the sheriff executed a sheriff's deed conveying Bentley's and his guardian's interest to Watson except for "all the oil and gas in and underlying said premises, and also all rights and privileges now held by the Pure Oil Company, by a

certain oil and gas lease[.]" Consequently, Bentley retained a one-fifth interest in the oil and gas. Watson then owned the entire surface of the Scarborough Tract and his one-fifth interest in the oil and gas.

{¶13} On April 15, 1916, Watson conveyed the Scarborough Tract to A.H. Anderson, subject to the reservation of his interest in the oil and gas.

{¶14} On April 13, 1931, Bentley assigned his interest in the Pure Oil Company lease to Watson for the term of the lease.

{¶15} After Bentley's assignment, in 1931, title to the oil and gas underlying the Scarborough Tract was owned as follows. Maggie, Harlan, Watson, and Bentley each owned an undivided interest in the oil and gas. And Edith owned a one-fifth interest in royalties from the production of oil and gas.

{¶16} On Mach 31, 1944, the Monroe County Common Pleas Court issued a judgment confirming the forfeiture of certain oil and gas royalty interests, including the interest of the Scarborough Heirs for delinquent taxes. On July 13, 1944, pursuant to that judgment entry, the Monroe County Auditor executed an auditor's deed (the Auditor's Deed) conveying the following one-eighth royalty interest to Nova Christman (Christman Royalty Interest):

> [T]he 1/8 or all the royalty in oil and gas in the name of Scarborough Heirs, under 70.70 (acres), Range 6, Township 4, Section 17 pt ne, former W.T. [sic] Scarborough Heirs farm now in the name of Martin L. Devore, listed by the Pure Oil Company. Any oil or gas lines to credit of same. Reservations for oil and gas – Monroe County Deed Records, Volume 83, Pages 542 and 543.

{¶17} The Auditor's Deed refers to "Monroe County Records, Volume 83, Pages 542 and 543." These references are to the instruments that originally severed the above Christman Royalty Interest. Volume 83, Page 542 reserved a one-fifth interest for Bentley and Volume 83, Page 543 reserved a one-fifth interest for Watson.

{¶18} Nova Christman died on May 3, 1992. His estate did not issue a certificate of transfer until March 26, 2007. All of Nova's interest (the Christman Royalty Interest) passed equally to his three heirs – the three appellants.

**{¶19}** On April 12, 2013, after appellee's notice of publication in the quiet title action against Maggie and Harlan, appellants filed a preservation claim under the 2006 ODMA. Appellants claimed a right to royalties from the production of oil and gas from the Property.

**{¶20}** On March 11, 2016, appellee filed a complaint against appellants. He also named as defendants Maggie, Harlan, Edith, Watson, Bentley, and all of their heirs and assigns (the Scarborough defendants). Appellee sought a declaratory judgment that he is the rightful owner of the oil and gas underlying the Property. Appellants counterclaimed seeking a declaratory judgment that they own the 1/8 royalty in the oil and gas interest underlying the entire Scarborough Tract.

**{¶21}** The trial court entered a default judgment against the Scarborough defendants after they failed to enter an appearance. The matter proceeded against appellants.

**{¶22}** Appellants and appellee filed competing motions for summary judgment. The trial court granted summary judgment in favor of appellee and against appellants. In so doing, the court found that appellants asserted an interest in the oil and gas royalties as successors of Watson and/or Bentley. Because appellee had already obtained a judgment in 2001 (approximately 17 years prior) against Watson's and Bentley's assignees, the trial court found any claim to the Christman Royalty Interest asserted by appellants was barred by the doctrine of res judicata. The court found that appellants were in privity with the parties to the 2000 ODMA lawsuit by virtue of being Watson's and Bentley's successors. It further pointed out that Watson, Bentley, and their unknown heirs, successors, and assigns were served notice of the ODMA lawsuit by publication.

**{¶23}** The trial court went on to find that appellee had conducted a diligent search in order to ascertain who might own Watson's, Bentley's, and Edith's interests. And when he was unable to locate any owners, appellee utilized notice by publication. The court noted that appellee's search did not reveal appellants via the Auditor's Deed because the Auditor's Deed is not contained in the Grantor/Grantee Index of the county recorder's office when conducting a search for Maggie, Harlan, Edith, Watson, Bentley, or the "Scarborough Heirs." Instead, the Grantor/Grantee Index only lists the Auditor's Deed under Nova Christman and the Monroe County Auditor. Additionally, the court noted that

Case No. 18 MO 0005

for almost 15 years after Nova Christman's death (from 1992 until 2007), appellants did nothing to transfer the record title of the Christman Royalty Interest to their names. In fact, they did not obtain a certificate of transfer for the Christman Royalty Interest until July 5, 2007, which was six years after the ODMA lawsuit concluded.

**{¶24}** Based on the above, the trial court found no genuine issue of material fact existed and entered judgment in appellee's favor. Appellants filed a timely notice of appeal on April 5, 2018.

**{¶25}** Appellants raise nine assignments of error. They consolidate all but two of those assignments of error into one. We will address the assignments of error in the same manner as appellants.

**{¶26}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

**{¶27}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist., 2015-Ohio-4167, 44, 44 N.E.3d 1011 N.E.3d 1011, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶28}** Appellants address their first, second, fifth, sixth, seventh, eighth, and ninth assignments of error together as one.

**{¶29}** Appellants' first assignment of error states:

THE COURT BELOW ERRED IN FINDING THAT THE DEFENDANTS-APPELLANTS, KATHERINE HASELBERGER,

CHARLOTTE MCCOY AND JOHN L. CHRISTMAN WERE BARRED BY THE DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL IN THAT THEY WERE NOT NAMED AS PARTY DEFENDANTS IN THE PRIOR ACTION * * * SINCE DEFENDANTS-APPELLANTS, KATHERINE HASELBERGER, CHARLOTTE MCCOY AND JOHN L. CHRISTMAN WERE NOT NAMED IN SAID SUIT AND THERE WAS NO IDENTITY OF PARTIES NOR WERE THEY IN PRIVITY WITH THE THREE NAMED DEFENDANTS, SINCE THEIR PREDECSSOR IN TITLE, NOVA A. CHRISTMAN, HAVING OBTAINED HIS INTEREST FOR 1/8 OR ALL THE ROYALTY UNDER THE SUBJECT PREMISES FROM THE MONROE COUNTY AUDITOR IN A DEED IN 1944 WHICH DEED WAS THE RESULT OF A TAX FORFEITURE SALE AND THEREFORE, HIS PREDECESSOR IN TITLE WAS THE STATE OF OHIO AND, THEREFORE, NO PRIVITY EXISTED WITH THE NAMED DEFENDANTS-APPELLANTS.

**{¶30}** Appellants' second assignment of error states:

THE COURT BELOW ERRED IN NOT FINDING THAT THERE WAS NO NOTICE TO THESE DEFENDANTS-APPELLANTS AND THAT THE NOTICE TO THE THREE SCARBOROUGH HEIRS, AS SHOWN IN EXHIBITS HERETO, WERE ONLY SERVED ON WATSON D. SCARBOROUGH, BENTLEY SCARBOROUGH AND EDITH B. SCARBOROUGH, THEIR UNKNOWN HEIRS, DEVISEES AND LEGATESS, BY PUBLICATION. THERE WAS NO MENTION OF SUCCESSORS AND ASSIGNS IN THE COMPLAINT, PUBLICATION OF NOTICE, NOR IN THE DEFAULT JUDGMENT ENTRY. THEREFORE SAID JUDGMENT IS NOT BINDING FOR LACK OF PRIVITY AND SERVICE ON THESE DEFENDANTS-APPELLANTS.

**{¶31}** Appellants' fifth assignment of error states:

Case No. 18 MO 0005

THE COURT BELOW ERRED IN FINDING THAT THE INTEREST OF DEFENDANTS-APPELLANTS WAS ABANDONED OR EXTINGUISHED PURSUANT TO THE 1989 OHIO DORMANT MINERAL ACT (O.R.C. §5301.56) IN THAT THE UNDERLYING QUIET TITLE ACTION WAS DEFECTIVE IN THAT IT GAVE NO NOTICE TO THESE DEFENDANTS-APPELLANTS IN THAT IT DID NOT NAME THEM AS DEFENDANTS NOR DID IT NAME THE SUCCESSORS OR ASSIGNS OF THE SCARBOROUGH HEIRS AS DEFENDANTS AND THAT AT THIS TIME, THE SCARBOROUGH HEIRS DID NOT OWN ANY INTEREST IN SAID PROPERTY DUE TO THE AUDITOR'S DEED TO NOVA A. CHRISTMAN IN 1944; THEREFORE, SAID QUIET TITLE ACTION WAS A NULLITY.

**{¶32}** Appellants' sixth assignment of error states:

THE COURT BELOW ERRED IN STATING THAT THE INTEREST CLAIMED BY DEFENDANTS-APPELLANTS WAS ONLY THE INTEREST OF SUCCESSORS OF BENTLEY SCARBOROUGH AND/OR WATSON D. SCARBOROUGH BY THE AUDITOR'S DEED WHEN IN FACT THE DEFENDANTS-APPELLANTS CLAIMED NOT ONLY THAT INTEREST BUT THE INTEREST OF ALL THE SCARBOROUGH HEIRS WHOSE INTERESTS WERE EXTINGUISHED BY THE TAX FORFEITURE SALE. THUS THE SAME COULD NOT BE BARRED BY THE DOCTRINE OF RES JUDICATA OR COLLATERAL ESTOPPEL DUE TO THERE NOT BEING ANY PRIVITY BETWEEN THESE DEFENDANTS-APPELLANTS AND THE SCARBOROUGH HEIRS. THE DEFENDANTS-APPELLANTS' ROOT OF TITLE BEING FROM THE STATE OF OHIO AND NOT THE SCARBOROUGH HEIRS.

**{¶33}** Appellants' seventh assignment of error states:

THE COURT BELOW ERRED IN FINDING THERE WAS PRIVITY BETWEEN THE NAMED SCARBOROUGH DEFENDANTS WHO WERE

SERVED BY PUBLICATION WHO HAD NO INTEREST IN SAID PREMISES AND WERE NOT IN PRIVITY WITH THESE DEFENDANTS-APPELLANTS. THEREFORE, SAID JUDGMENT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

**{¶34}** Appellants' eighth assignment of error states:

THE COURT BELOW ERRED IN FINDING PRIVITY BY STATING THAT IN THE PRIOR CASE IN 2000, THAT THE SUCCESSORS AND ASSIGNS WERE NAMED WHEN, IN FACT, THE COMPLETE RECORD AS SHOWN IN THE ATTACHED EXHIBIT SHOWS THAT THERE WAS NO NOTICE TO ANY SUCCESSORS AND ASSIGNS OF THE SCARBOROUGH HEIRS.

**{¶35}** Appellants' ninth assignment of error states:

THE COURT BELOW ERRED IN NOT GRANTING DEFENDANTS-APPELLANTS' COUNTERCLAIM AND ENTERING JUDGMENT FOR THEM.

**{¶36}** In these assignments of error, appellants contend the trial court erred in finding that their claims were barred by the doctrine of res judicata because they were not named as party defendants in the ODMA lawsuit nor were they in privity with the named defendants. They point out that their father, Nova Christman, obtained his title to the Christman Royalty Interest through a tax forfeiture sale, not from the Scarborough heirs. And they assert the ODMA lawsuit did not name or serve "successors and assigns" in its publication, complaint, or judgment entry. They further note that the ODMA lawsuit did not even name two of the five Scarborough heirs.

**{¶37}** Pursuant to the doctrine of res judicata, a valid, final judgment on the merits bars any subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the first action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus.

**{¶38}** The doctrine of res judicata is made up of two parts: claim preclusion (res judicata) and issue preclusion (collateral estoppel).

**{¶39}** Claim preclusion prevents subsequent actions by the same parties, or those in privity with the parties, based on any claim arising out of a transaction that was the subject matter of a previous action. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E .2d 803, ¶ 6.  ¶ 7.

**{¶40}** Issue preclusion prevents parties, or those in privity with a party, from re-litigating facts or issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 1994-Ohio-358, 637 N.E.2d 917.  Issue preclusion applies when three conditions are met:  (1) the fact or issue was actually and directly litigated in the prior action, (2) the fact or issue was passed upon and determined by a court of competent jurisdiction, and (3) the party against whom issue preclusion is asserted was a party in privity with a party to the prior action.  *Id.*, citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969), paragraph two of the syllabus, overruled in part by *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 1995-Ohio-331, 653 N.E.2d 226. "Issue preclusion applies even if the causes of action differ." *O'Nesti*, 113 Ohio st.3d at ¶ 7.

**{¶41}** This case involves issue preclusion as opposed to claim preclusion. The first two conditions of issue preclusion are clearly met in this case.

**{¶42}** First, the issue here is the ownership of the oil and gas rights (including royalties), previously owned by Watson and Bentley, underlying the Property.  That too was the issue in the 2000 ODMA Lawsuit (in addition to the ownership of Edith's interest).

**{¶43}** Second, the Monroe County Common Pleas Court, which is a court of competent jurisdiction, determined that appellee was the owner of the oil and gas rights underlying the Property.

**{¶44}** The only question here is whether the third condition of issue preclusion was met.  In this case, the parties are not identical to the parties in the 2000 ODMA Lawsuit.

**{¶45}** Appellee asserts that appellants were named parties in the 2000 ODMA Lawsuit and the corresponding notice by publication. He suggests that the complaint and the notice included Watson's and Bentley's "assigns" and "successors."

{¶46} A careful reading of the named parties, however, reveals that appellee failed to name appellants. The complaint lists as defendants: (1) Watson; (2) Bentley; (3) Edith; and (4) "their unknown heirs, devisees and legatees[.]" Likewise, the legal notice by publication is addressed to: "WATSON D. SCARBOROUGH, BENTLEY SCARBOROUGH and EDITH B. SCARBOROUGH and their unknown heirs, devisees and legatees[.]" (Pt. Motion for S.J. Ex. C). The terms "assignees" and "successors" do not appear on either the complaint or the notice.

{¶47} Black's Online Law Dictionary defines "heir" as "[a] person who succeeds, by the rules of law, to an estate in lands, tenements, or hereditaments, upon the death of his ancestor, by descent and right of relationship[.]" It defines "devisee" as "[t]he person to whom lands or other real property are devised or given by will." And it defines "legatee" as "[t]he person to whom a legacy is given[.]" Appellants do not share any of these relationships with Watson and Bentley.

{¶48} Instead, appellants share the relationship of either "assignee" or "successor" with Watson and Bentley. Black's Online Law Dictionary defines "assignee" as "[a] person to whom an assignment is made[.]" It defines "successor" as "[o]ne who succeeds to the rights or the place of another[.]" Appellee could have, but did not, name Watson's and Bentley's assignees and successors in the complaint or the notice.

{¶49} Thus, in order for the third condition to be met, appellants must be in privity with Watson and Bentley or their heirs, devisees, or legatees.

{¶50} "As a general matter, privity 'is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" *Thompson*, 70 Ohio St.3d at 184, quoting *Bruszewski v. United States* (C.A.3, 1950), 181 F.2d 419, 423 (Goodrich, J., concurring). A party is in privity with another "if he succeeds to an estate or an interest formerly held by the other * * * because privity is a succession of interest or relationship to the same thing." *City of Columbus v. Union Cemetery Ass'n*, 45 Ohio St.2d 47, 51, 341 N.E.2d 298 (1976).

{¶51} In addressing privity when dealing with issue preclusion, the First District noted that "nonparty preclusion may be justified based on a variety of preexisting 'substantive legal relationship[s]' between the person to be bound and a party to the

judgment, such as preceding and succeeding owners of property." *Wright v. Heller*, 1st Dist. No. C-160897, 2018-Ohio-149, ¶ 31, appeal not allowed, 152 Ohio St.3d 1482, 2018-Ohio-1990, 98 N.E.3d 296, citing *Taylor v. Sturgell*, 553 U.S. 880, 894, 128 S.Ct. 2161, 171 L.Ed.2d 155. It further observed that "'[S]uccessive ownership interests in the same property are sufficient to sustain the flow of privity.'" *Id.*, quoting *City of Columbus v. Union Cemetery Assn.*, 45 Ohio St.2d 47, 51, 341 N.E.2d 298 (1976).

**{¶52}** In this case, appellants claim to be the rightful owners of a royalty interest in the oil and gas underlying the Property. They claim the interest passed to them when their father, Nova Christman, died in 1992. Nova acquired any royalty interest he may have had from the Auditor's Deed in 1944. The Auditor's Deed refers to "Monroe County Records, Volume 83, Pages 542 and 543." Volume 83, Page 542 had previously reserved a one-fifth interest for Bentley and Volume 83, Page 543 had previously reserved a one-fifth interest for Watson. Thus, appellants' interest (if any existed) can be traced back to Watson's and Bentley's interests. Appellants would be the successive owners of Watson's and Bentley's royalty interests.

**{¶53}** "[O]ne who is in privity with another because of the transfer of property 'stands in the same shoes' as to the rights of the prior owner in the same property, thereby giving the subsequent owner the same rights and obligation as the original owner had in regard to the property." *Berardi v. Ohio Turnpike Commission*, 1 Ohio App.2d 365, 370, 205 N.E.2d 23 (8th Dist.1965).

**{¶54}** Any interest Nova acquired came by way of the Auditor's Deed referencing the Scarborough Heirs and specifically Watson's and Bentley's interests. Thus, Nova was in privity with Watson and Bentley. When Nova died, his property, including any royalty interest, passed to appellants. Appellants then "stood in the same shoes" as Nova, who was in privity with Watson and Bentley. Therefore, appellants were in privity with the named parties in the 2000 ODMA Lawsuit.

**{¶55}** Because appellants were in privity with the named parties in the 2000 ODMA Lawsuit, the trial court correctly applied the doctrine of res judicata to bar appellants' claim in this case.

**{¶56}** Accordingly, appellants' first, second, fifth, sixth, seventh, eighth, and ninth assignments of error are without merit and are overruled.

**{¶57}** Appellants' third assignment of error states:

THE COURT BELOW ERRED IN NOT GRANTING TO THESE DEFENDANTS-APPELLANTS THE ENTIRE 1/8 OR ALL THE ROYALTY INTEREST UNDER SAID PREMISES PURSUANT TO THE 1944 AUDITOR'S DEED ATTACHED HERETO IN THAT THERE WAS A NEW SEPARATE AND PERFECT CHAIN OF TITLE FOR SAID INTEREST IN SAID PROPERTY AS ESTABLISHED BY SAID AUDITOR'S DEED AFTER ONE (1) YEAR.

**{¶58}** Here appellants argue the trial court erred in not quieting title in their names for the one-eighth Christman Royalty Interest.

**{¶59}** Appellants' fourth assignment of error states:

THE COURT BELOW ERRED IN STATING THERE WERE NO TITLE TRANSACTIONS AS TO SAID PREMISES WHERE IN FACT THE DEFENDANTS-APPELLANTS PREDECESSOR IN TITLE, THEIR FATHER, NOVA A. CHRISTMAN, LEASED SAID PROPERTY TO RELIABLE EXPLORATION BY LEASE DATED AUGUST 8, 1981 AND RECORDED ON SEPTEMBER 24, 1981 IN VOLUME 120, PAGE 530 OF THE MONROE COUNTY LEASE RECORDS AND, FURHTER THIS LEASE WAS RELEASED FROM RECORD IN JANUARY, 1984 IN VOLUME 8, PAGE 299 OF THE SPECIAL RELEASE RECORDS IN THE MONROE COUNTY RECORDER'S OFFICE.

**{¶60}** In this assignment of error, appellants contend the trial court was incorrect in finding there were no title transactions regarding the Christman Royalty Interest.

**{¶61}** Because the doctrine of res judicata bars appellants' action, appellants' third and fourth assignments of error are moot.

**{¶62}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.
D'Apolito, J., concurs.

Case No. 18 MO 0005

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**